# CHARLESTON.

HARTLEY *et al. v.* AUI/T WOODENWARE CO. *et als.*

Submitted October 8, 1918.   Decided October 15, 1918.

1. CORPORATIONS—*Directors— Authority of Stockholders—Notes for Borrowed Money.*

Where by statute the board of directors of a corporation are empowered to do or cause to be done all things that are proper to be done, and by by-law of the stockholders are also specifically given full power to conduct the business and execute deeds of trusts or mortgages to secure the payment of its notes, bonds or other evidences of debt, no additional authority of the stockholders is required to authorize or validate notes given for borrowed money and deeds of trust securing the same executed by the officers of a corporation pursuant to authority conferred by the board of directors. (p. 784).

2. SAME—*Acts of Officers—Estoppel by Deed.*

Corporations, as well as individuals, are estopped from contradicting recitals of facts contained in their deeds of trust or other deeds, including the fact of the adoption of resolutions of stockholders or directors authorizing the borrowing of money and securing the same by deeds of trust or mortgages on their corporate property. (p. 787).

3. SAME—*Recitals in Deeds—Reliance.*

Persons dealing with corporations without actual notice to the contrary, have the right to accept as true facts recited in their deeds executed and acknowledged in the form prescribed by statute, including facts respecting the adoption of resolutions of stockholders and directors, for the records of such corporations are private records, which one dealing with them is not obliged to inspect. (p. 789).

4. SAME—*Authority of General Manager—Representation—Reliance.*

A representation by the general manager of a corporation, that certain indebtedness of the corporation exists, made for the purpose of obtaining a credit or advancement of money in any form for payment thereof, is an act within the scope of his authority and may be relied upon by the person to whom it is made, in the absence of knowledge to the contrary or of fact sufficient to create a reasonable doubt as to the truth of the presentation. (p. 792).

5. SAME—*Representation by General Manager—Liability—Burden of Proof.*

Upon an issue as to the liability of the corporation in such case,

the burden is upon it to prove the representation was false and that the person loaning, paying or advancing the money on the faith of it had reason to believe it was untrue, or knew such facts as were sufficient to put him upon inquiry as to the truth thereof. (p. 792).

6. SAME—*Officers and Agents—Acquiescence—Delegation of Authority.*

Acquiescence of the board of directors of a corporation in the exercise of powers and authority by its officers and agents, which it could have conferred upon them but has not expressly conferred, with actual or constructive notice of such assumption and exercise thereof, amounts to an implied delegation of such powers and authority. (p. 792).

7. SAME—*Directors—Constructive Notice—Records.*

The board of directors of a corporation has constructive notice of such facts as its records, books and papers disclose. (p. 794).

8. SAME—*Borrowing Money—Disavowal—Retention of Benefits.*

Though the officers and agents of a corporation may have no inherent authority to borrow money for the payment of its debts, it cannot disavow the unauthorized act of borrowing money in its name, while retaining the benefit thereof. (p. 795).

9. BILLS AND NOTES—*Notice of Infirmity—Bank Officer.*

The mere existence of a personal relationship between the cashier of one bank and the president of another, to which it sends commercial paper, regular on its face, in the usual course of business, is not proof of such notice of infirmity in the paper, to the receiving bank or its president, as the cashier of the sending bank may have had. (p. 796).

10. ASSIGNMENTS FOR BENEFIT OF CREDITORS—*Compensation of Trustee—Value of Services.*

A lump-sum allowance of compensation to the trustees in a deed of assignment for the benefit of creditors, by a court administering the assets of the insolvent debtor, must be founded upon clear proof that the amount so allowed does not exceed the actual value of the services rendered. (p. 797).

11. SAME.                                              ....

Although within the sound discretion of the trial court, such an allowance is reviewable and, if deemed excessive by the appellate court, it will be reduced to such an amount as, in its opinion, is clearly within the proof of the value of such services. (p. 797).

12. CREDITORS' SUIT—*Counsel Fees—Preparation of Final Decree.*
> It is erroneous to decree compensation to an attorney for the preparation of the final decree in a creditors suit, payable out of the fund, but the counsel fees allowable on other grounds may be so apportioned as to compensate him for such services. (p. 797).

Appeals from Circuit Court, Marion County.

Suit by E. F. Hartley and another, trustees under assignment by the Smith-Race Grocery Company, against the Ault Woodenware Company, the Standard Life Insurance Company of America, the Farmers' Bank of Clarksburg, and others. From the decree on a commissioner's report, the Standard Life Insurance Company of America and the Farmers' Bank of Clarksburg separately appeal.

*Affirmed in part. Reversed in part. Remanded.*

*E. M. Everly, W. S. Meredith* and *Fred W. Scott,* for appellant Standard Life Ins. Co. of America.

*Harvey W. Harmer* and *J. E. Law,* for appellant Farmers' Bank of Clarksburg.

*Charles Powell, Kemble White* and *E. M. Showalter,* for appellees Hartley and others.

*Talbott & Hoover,* for appellee Davis Trust Co.

APPEAL OF STANDARD LIFE INSURANCE COMPANY OF AMERICA.

MILLER, JUDGE:

Plaintiffs, Hartley and Frame, trustees in a deed of general assignment of the Smith-Race Grocery Company, brought this suit in February, 1915, the general object of which was to marshall the assets, convene the creditors, and to have settled and adjudicated all disputed claims of lien and general creditors, and a distribution of the net cash assets to those entitled thereto.

The commissioner to whom the cause was referred, shortly after the institution of the suit, made his report in May, 1916. Among other things he reported that the lien first in priority on the real estate of the Smith-Race Grocery Company, located in the city of Morgantown, West Virginia, was a deed of trust of June 30, 1913, in favor of Standard Life

Insurance Company of America, securing it in the payment of a loan of $15,000.00, evidenced by the note of the grantor of even date therewith at five years, with interest at six per centum per annum, and aggregating June 1, 1916, $17,625.00; and the lien first in priority on the real estate of said grocery company situated in the city of Fairmont, West Virginia, was another deed of trust exectued by it on the same day, in favor of said insurance company, to secure the insurance company the payment of another loan of $50,000.00, likewise evidenced by the note of said grocery company, of even date with said deed of trust, at five years, with interest at six per centum, and aggregating on June 1, 1916, $58,750.00.

To this part of the report of the commissioner exceptions were interposed on behalf of the Smith-Race Grocery Company, the debtor, the Exchange Bank of Mannington, and the First National Bank of Fairmont. The grocery company excepted also to the allowance of the aggregate amount of said indebtedness, $68,585.83, without deducting therefrom an alleged credit claimed of $20,000.00. And counsel for the grocery company and the First National Bank of Fairmont, apparently to be consistent, cross assign error in the final decree appealed from that the court should also have wholly disallowed the claim of appellant as a common creditor.

The circuit court sustained the several exceptions of these exceptors to the report of the commissioner in favor of the insurance company in so far as it gave it priority on the real estate covered by the two deeds of trust, but adjudged to it the full amount of its debt and interest evidenced by the notes secured thereby, with right to share ratably with the general creditors in the distribution of the assets of the grocery company.

The basis of the court's decree respecting these liens is elaborated in some nineteen findings of law and fact, contrary to the general and special findings of the commissioner, and which we think are wholly unwarranted by any evidence in the case. It is upon these findings and the legal principles applicable thereto that counsel for appellees rely to sustain the decree.

Summarized, these findings are: First, that the two deeds

of trust to the Standard Life Insurance Company were executed for and on behalf of the Smith-Race Grocery Company by Clark, president, and Smith, secretary, without general or special authority of the stockholders or directors lawfully conferred. Second, that the Standard Life Insurance Company, through its agents and representatives at the time of the execution and delivery of said deeds of trust, had knowledge and notice that they were executed and delivered without authority given by any lawfully constituted meeting of stockholders or directors.

And outside of and not covered by any findings of law or fact by the court, counsel for appellees here for the first time contend that the decree denying appellant the benefit of its lien by deeds of trust, and in support of their cross assignment of error, that it should also have been denied any recovery as a general creditor of the grocery company, first, on the theory that the evidence showed a fraudulent purpose and scheme on the part of Race, general manager, and Smith, secretary, of the grocery company in obtaining said loan, to further their private interests, rather than the interests of their company, and of all which appellant had notice; second, that appellant, a Pennsylvania corporation, with principal offices at Pittsburg, was actuated by unlawful and fraudulent motives in conditioning its loan to the grocery company upon the officers of that company procuring subscriptions by responsible and influential citizens of West Virginia to its capital stock, and that in accepting as such subscribers, Race, general manager, Smith, secretary, and also stockholders, and of Tumlin, Showalter and Furbee, not stockholders, officers or directors of the grocery company, but respectively cashier of the Citizens National Bank of Fairmont, the First National Bank of Fairmont and the Farmers Bank of Clarksburg, West Virginia, with which banks they and their grocery company are shown to have had extensive business and financial transactions, the insurance company had notice of fraudulent purposes of Race and Smith, depriving it of all right to recover its debt decreed it in the final decree and of the benefit of its liens therefor.

On the first proposition, want of authority to execute the

deeds of trust, it may be said in reply, first, that these deeds show on their face that they were executed under the seal of the company and acknowledged and sworn to by the president before E. C. Frame, notary public, one of the plaintiffs in the bill, and recite in full the resolutions of the stockholders at a meeting at which there were present in person and by proxy more than sixty per cent of all the stock of the said company, giving authority to the Board of Directors; and also resolutions of the Board of Directors at a meeting held on the same day pursuant to the resolution of the stockholders, giving authority to the officers of the corporation to borrow the money and to execute deeds of trust securing the same. The acknowledgments to these deeds were sworn to by the president in the form prescribed by the statute, averring authority to execute, acknowledge and affix the seal of the corporation thereto, and that they were so signed, sealed and acknowledged by him for and on behalf of said company by its authority duly given. Wherefore these deeds bear evidence on their face of more than ample authority to execute and deliver the same, for it is conceded that under the general authority given by sec. 49, Ch. 53 of the Code, boards of directors of corporations are empowered to do or cause to be done all things that are proper to be done by corporations; and that by article 3, section 4, of the by-laws of the stockholders the board of directors was given full power to conduct the business and to execute deeds of trust or mortgages to secure the payment of its notes, bonds or other evidences of debt, so that so far as authority of the board of directors is concerned we need not concern ourselves with the legality or the regularity of the meeting of the stockholders or of the resolutions passed respecting these deeds of trust. Whether a board of directors without special authority and independently of such by-law may make a general assignment of all the property of a corporation and wind up its business may be questionable. *Kyle* v. *Wayne*, 45 W. Va. 350. But there can be no doubt of the authority of a board of directors of a corporation, certainly with such by-law of the stockholders, to borrow money to pay its debts or to carry on its business. *Hulings* v. *Hulings Lumber Co.*, 38 W. Va. 351.

In this case not only do the deeds on their face recite authority but the representatives of the insurance company, before making the loans, called for and were furnished certified copies of the resolutions of both stockholders and directors. These were offered in evidence. They are duly certified by Clark and Smith, respectively, president and secretary. The copy of the resolutions of the stockholders, so certified, recites that they were passed at a meeting held pursuant to notice and at which meeting all the stockholders of the corporation were present. The copy of the minutes of the meeting of the directors recites that it was held pursuant to the call of the president by oral notice given to each of the directors and that those present, Clark, Law, Smith, Nichols, Race and Hartley, constituted a quorum.

But it is contended on behalf of the Smith-Race Grocery Company and of the three banks contesting the rights of appellant, that the evidence tends to show want of due notice, such as was required by sec. 2, art. 3, of the by-laws and by sec. 57, ch. 53 of the Code. The evidence on this question of fact is not very satisfactory. But how does this question affect the rights of the Insurance Company? It had the right under the evidence in this case to accept the deeds and resolutions offered as showing full authority in the officers of the corporation to execute the same. We observe, moreover, that the forms of resolutions of stockholders and directors recited in the general deed of assignment of the corporation to the plaintiffs, as trustees, are in almost identically the same language.

Furthermore, we observe that neither the bill filed by the assignees, Hartley and Frame, which was prepared by Showalter and Frame, attorneys, nor the petition and answer of the Smith-Race Grocery Company, prepared and filed by Showalter, anywhere expressly allege want of authority in the board of directors to execute these deeds of trust. On the contrary it is alleged that the stock of the Insurance Company was in fact paid for by the grocery company and constituted valuable assets of that company. It is alleged in the bill that there is apparent want of authority of the officials of the company in executing, negotiating and trans-

ferring many of the notes, but nothing is alleged as to want
of authority to make the deeds of trust to appellant, nor
specifically applying the general allegation of want of au-
thority to execute some of the notes to the notes or bonds se-
cured by said deeds of trust; nor does the petition and an-
swer of the grocery company allege invalidity of either of
said deeds of trust; on the contrary, both pleadings would
appear to eliminate notes and deeds of trust by the general
charge of no legal liability on any notes ranging "from
twenty-five hundred to ten thousand dollars." As appellant's
notes exceed the sum of ten thousand dollars they could not
have been in the contemplation of the pleader when making
such general charge. And so far as these pleadings, in any
aspect, may intend to impute lack of authority on the part
of the officers to execute the deeds of trust or notes, they
are distinctly denied in the answer of appellant.

In addition to all the documentary evidence and want of
pleadings to put in issue the validity of the notes and deeds
of trust, we think the Smith-Race Grocery Company, as well
as its contesting creditors, are further conclusively estopped
by the fact, not controverted, that these loans by the insur-
ance company were actually paid into the hands of the Gro-
cery Company, and that at least fifty thousand dollars there-
of actually went to the credit of the grocery company in the
First National Bank of Fairmont, and, so far as the record
discloses, was actually used in the business of the grocery
company. Besides it is admitted that a large part of the
stock of the insurance company issued to one of the sub-
scribers thereto is actually held by the First National Bank
as collateral security for a loan to the subscriber individually,
not to the grocery company. No proffer was ever made in
pleading or otherwise to return to appellant the money
loaned and so passed to the credit of the grocery company.

The law, everywhere well recognized, is that one is es-
topped by his deed from contradicting the facts recited there-
in, and this estoppel operates against all persons claiming by
or under him, and there is no exception to this rule in favor
of corporations. *Summerfield* v. *White,* 54 W. Va. 311, 319;
*Wynn* v. *Harmon,* 5 Gratt. 157; *Nash* v. *Fugatee,* 24 Gratt.

202. In *Manhattan Hardware Co.* v. *Phalen,* 128 Pa. St. 110, an action of scire facias on a mortgage, where the mortgage recited that it was executed in accordance with a resolution passed by a stockholders meeting of a previous date duly entered upon the minutes of the said corporation, it was distinctly held that the affidavit of defense that the money for which the mortgage was given was borrowed by the president without authority and that less than half the amount thereof ever came to the company's treasury, constituted no defense and was insufficient 'to prevent summary judgment. In *Louisville etc. R. R. Co.* v. *Louisville Trust Co.,* 174 U. S. 552, where a statute authorized the board of directors of a railway corporation upon the petition of a majority of the stockholders to guarantee the negotiable bonds of another corporation, it was held that the execution thereof by the president and secretary under the seal of the corporation without the authority and assent of a majority of the stockholders was invalid as against purchasers of bonds with notice of want of authority, but was valid as to a purchaser in good faith without notice of such want of authority. And as specially applicable to the contention here that the minutes of the stockholders and directors purporting to authorize the loans and deeds of trust in this case were not actually spread on the record, but were found in typewriting on sheets of paper in the minute book, we quote from the opinion in that case at pages 575-6: ''The record of a railroad corporation and of the board of directors which would naturally show whether such a petition had or had not been filed, were private records, which a purchaser of the bonds was not obliged to inspect which he would have been if the fact had been required by law to be entered upon a public record. Brown, J., in *Blair* v. *St. Louis, Hannibal & Keokuk R. R.,* 25 Fed. Rep. 684; *Hackensack Water Co.* v. *DeKay,* 9 Stewart (36 N. J. Eq.) 548, 568; *McCormick* v. *Market Bank,* 165 U. S. 538, 551; *Irvine* v. *Union Bank of Australia,* 2 App. Cas. 366, 379.'' There seems to be no exception to the general rule that a sealed instrument fairly and voluntarily executed is conclusive upon all who seal it of everything admitted in it; and when one has had the benefit of such instrument, even

if founded upon an illegal consideration, he is estopped to deny its validity. *Town of Point Pleasant* v. *Greenlee et al.,* 63 W. Va. 207, 214.

Respecting the second proposition relied on, if the Grocery Company, and those claiming under it are estopped by the recitals in the deeds and by acceptance of the benefits of the loans thereby secured, as we have decided, little if anything more need be said on the question of notice to the appellant of want of authority. But on this question there is not a particle of evidence showing such notice to the insurance company or to any agent with authority to represent it. It is suggested in argument that as the forms of the resolutions passed by stockholders and directors were drafted by counsel for the insurance company, this fact was sufficient to impute notice to it of the supposed invalidity of the meetings held and action taken thereon. But this fact is not pleaded and there is certainly no proof that any officer or agent of the insurance company was present or had any knowledge of what took place at these meetings except as reported and represented by the certified copies of the resolutions and the recitals thereof in the deeds of trust.

But may the decree denying appellant's liens be sustained on the theory of fraudulent purposes on the part of Race and Smith and notice thereof to appellant? There is not a particle of evidence to support this contention. It is fully shown that at the time appellant made its loans to the grocery company the latter was apparently a prosperous going concern. Its collapse came nearly a year afterwards. Race and Smith and all those associated with them in business were merchants and bankers in high social and financial standing. The insurance company was most painstaking in making these loans. It employed local counsel to assist its general counsel in examining the title and in passing upon the sufficiency of the deeds of trust and notes secured thereby, and there is nothing evidential or otherwise appearing in the record of which it had notice showing fraudulent purpose on the part of the officers or agents of the grocery company. The insurance company did not solicit these loans; it was induced to go outside of its own state in loaning its

money to this grocery company by application made through bankers and brokers in its home city. And in making the loans it was largely moved by the hope of extending its business of life insurance into this state, a perfectly legitimate and laudable object, and there is nothing in its conduct with reference to the grocery company or any of its officers or agents imputing any fraud or dishonesty therein. The fact, if sufficiently proven, that the officers of the grocery company sometime after procuring these loans from the insurance company diverted some of its money to reimburse some of the subscribers to the stock of the insurance company the money paid by them therefor, is immaterial so far as appellant's rights are concerned, for there is no evidence connecting them therewith. The evidence that the individual subscribers to the stock of the insurance company, which subscriptions were in writing, at the time of the loans, either paid therefor with their individual checks or with checks and notes for balance, and which notes are still held by the insurance company unpaid, is not controverted, and as already noted the plaintiffs in the bill so far from imputing fraud to any one actually claim these shares of stock as valuable assets of the grocery company.

APPEAL OF THE FARMERS BANK OF CLARKSBURG.

POFFENBARGER, PRESIDENT:

Both the commissioner and the court disallowed a claim presented by the Farmers Bank of Clarksburg, amounting to $47,510.69, and represented by thirteen checks of the Smith-Race Grocery Company, aggregating $47,500.00 and protest fees amounting to $10.69. Though all these checks ostensibly emanated from the Smith-Race Grocery Company, they were disallowed on two grounds: (1) fraud on the part of its officers in the issuance thereof, known by the bank and participated in by it through the conduct of its cashier; and (2) lack of authority in the officers and agents of the Smith-Race Grocery Company to execute and negotiate the checks, and the notes to which they bear some sort of relation. The answer claims indebtedness to the respondent in

the sums above mentioned and avers that it is evidenced by thirteen checks payable to the order of the bank's cashier and executed by the Smith-Race Grocery Company by H. F. Smith, its Secretary-Treasurer, and certificates of protest attached to some of the checks. That Race was general manager of the grocery company and Smith its secretary and treasurer is an incontrovertible fact. They procured from the Farmers Bank of Clarksburg drafts on the Hanover National Bank of New York, amounting in the aggregate to $90,-000.00, payable to the brokerage firm of Hollingshead and Campbell of New York, from Dec. 12, 1912, to March 19, 1913, ostensibly, at least, for and on behalf of their principal, and gave its checks on the Citizens Dollar Savings Bank of Fairmont, in payment therefor. All of the drafts on the New York bank were honored and, by means thereof, notes. amounting to $90,000.00 executed in the name of the grocery company, by J. A. Clark, its president, and H. F. Smith, its. secretary and treasurer, were paid and returned to the grocery company. To the extent of only $42,500.00, has the Farmers Bank been reimbursed for the amount so paid by it. At some point within this period of about four months, the checks given for the drafts began to come back dishonored. To meet the checks given in payment for the New York drafts and drawn on the Citizens Dollar Savings Bank, the grocery company, when its balance in that bank was insufficient to cover its checks, drew its own drafts on the Clarksburg bank and deposited them in the Citizens Dollar Savings Bank, which forwarded them, through its correspondent, the Davis Trust Company of Elkins, West Virginia, for collection. Payment of these drafts was not always provided for by deposits in the Farmers Bank or otherwise. In such cases, the grocery company would give the Farmers Bank other checks on the Citizens Dollar Savings Bank in payment of the drafts. In this way, the paper held by the banks had apparent life, currency and solvency, but the original indebtedness, not actually paid, was several times represented by new checks and drafts. The checks so issued for the $90,000.00 and re-issues thereof ran up to several hundred thousand dollars, possibly $800,000.00. The thirteen checks adduced

as evidence of the amount due the Farmers Bank are from the last issues. The Davis Trust Company had at one time $67,500.00 of the drafts drawn on the Clarksburg bank, one for $10,000.000, one for $16,000.00, both of which it sent to its Pittsburgh correspondent and collected, three for $10,-000.00 each and one for $11,500.00, which were sent to the Clarksburg bank, with directions to remit the amounts thereof to a Baltimore bank, another corespondent of the Davis Trust Company, to be placed to its credit. These four were not paid. The Davis Trust Company credited all of these drafts to the Citizens Dollar Savings Bank. On account of the unpaid drafts sent to the Clarksburg bank, the grocery company executed to the Davis Trust Company two notes for $5,000.00 each, bearing personal endorsements. Subsequently, it paid $20,000.00 on the drafts, which was credited to the Farmers Bank. These two notes and a draft for $11,-500.00, with interest, are allowed the Davis Trust Company in the decree. Only a part of another demand set up by it was allowed. Whether all the drafts received by the Davis Trust Company pertained to the Hollingshead and Campbell debts does not appear.

The Smith-Race Grocery Company was a trading corporation constantly using large amounts of commercial paper, and **L. G. Race**, the man who procured the drafts from the Clarksburg bank, apparently for and on its behalf, was its general manager. In payment therefor, he produced or caused to be sent its checks on another bank, signed by its secretary-treasurer. Representation that his principal was indebted to some other person, firm or corporation and delivery of the checks of his principal in indirect payment of such indebtedness were acts falling clearly within the scope of his authority. They were *pro tanto* general management of its business. Whether the representation was true or false, it was on its face an act apparently within his authority, and, unless the party receiving it and acting upon it knew it to be false or had reason to believe or suspect it was, it was binding upon his principal. Nothing in the evidence tends to prove the representation was false. On the contrary, the books and papers of the Smith-Race Grocery Company show

extensive dealings between it and Hollingshead and Campbell in commercal paper. Within the period covered by an audit of its books, February 7, 1912, to June 2, 1914, its liabilities to that firm ranged from $5,000.00 to more than $100,000.00, and its notes paid by the drafts procured from the Clarksburg bank were all found there. If it be conceded that the execution of these notes and authority to execute them were not strictly and fully proven, that alone does not preclude right of recovery on the part of the bank. The argument submitted puts the burden of proof on the wrong party. Thus far the transaction between Race and the bank was regular on its face and, if the alleged indebtedness paid with the drafts was fictitious or fraudulent for any reason, as regards Race's principal, the burden rests upon it to prove it and the bank's knowledge of it, or of facts sufficent to put the latter upon inquiry. To put the burden of proof of genuineness on the bank or other person similarly dealt with under such circumstances would open the widest possible door to the perpetration of frauds and render it impossible to conduct commercial business with any degree of safety.

The presumption of valid indebtedness to Hollingshead and Campbell upon which the Farmers Bank had a clear right to rely in its dealings with the Smith-Race Grocery Company, not having been overthrown, the so-called kiting of checks to which the Farmers Bank was made a party through its cashier does not prove any fraud upon the Smith-Race Grocery Company, participated in by that bank. The repetition of checks and drafts, countenanced and relied upon by it, was limited to the amounts represented by the unpaid checks given for drafts in favor of Hollingshead and Campbell, and, by means thereof, the bank was simply extending time and upholding the credit of its debtor, in an effort to obtain the money it had advanced. Other banks and other people may have suffered inconvenience, and possibly some losses, in consequence thereof, but the debtor was certainly not injured by the mere issuance of one of its obligations in discharge of another, or, in substance and effect, renewal of its obligations as they became due and payable. The charge that the cashier entered into these transactions with

knowledge of intent on the part of Race to load his bank up with a volume of his principal's paper equal to its obligations to Hollingshead and Campbell is not sustained by any admission of the cashier or the circumstances. The so-called kiting of checks did not begin for about a month after the commencement of the issuance of New York exchange. He admits Race told him his principal would be compelled to meet its maturities of the Hollingshead and Campbell obligations, on account of a disagreement with them, and asked him to assist it in doing so. He promised assistance to the extent of his ability. The request was accompanied by a statement indicating a solvent and healthy condition of the grocery company. The first checks given for exchange were paid. Then inability to pay developed after considerable obligations to the bank had been made. Finding himself embarrassed by acts and cirsumstances which, if disclosed to the directors, would bring down upon him severe censure, if nothing worse, and encouraged to go on by Race's assurances of ability to obtain money with which to pay up everything and straighten the situation out, he went on step by step until the latter part of March, 1913, when the last of the Hollingshead and Campbell obligations was taken up. A cessation and refusal of further credit would have precipitated the disaster which finally came. Continuance held out a ray of hope of emergence from the difficulties without loss to the bank or humiliation to himself. The primary and sole object of the transaction was, in its origin, provision for payment of the New York indebtedness, not check-kiting. The latter became subsequently an incident of the execution of the plan adopted, or a means of completing or sustaining it. Public policy does not forbid either an extension of time, renewal of obligations or indirect methods of payment, transfer or deferment of debts and obligations. None of the irregular transactions resorted to or adopted has wrought any injury to any creditor. Hence, no ground or cause for holding any of them absolutely void has been shown. If there was any fraud in them it was fraud upon the Farmers Bank, which it could waive. Kerr, Fraud and Mistake 48. Payment of the grocery company's debts was certainly no fraud upon it.

If the Holllingshead and Campbell obligations were not genuine in point of law or fact, nothing in the representations or conduct of Race, the general manager, was of such character as to apprise the cashier of their spuriousness or cause him to suspect it. They were represented to be honest debts. The resort to irregularities and what are sometimes highly reprehensible acts, in the process of payment thereof, and deferment of payment of obligations growing out of them, argues nothing against their validity. The efforts to pay, defer payment and renew, by any means adopted, however irregular or reprehensible in character, were in effect continuances and repetitions of the original representation.

Proof of the authority of Smith, the secretary and treasurer of the grocery company, to draw its checks and drafts, is overwhelming. Its records show innumerable instances of the exercise of such authority. To ascertain what authority an officer of a corporation has, it is not necessary to go to its by-laws. An informal or implied permission of the directors, not inhibited by the by-laws, amounts to a grant of authority. Their acquiescence in the known exercise of such authority suffices. *Union Bank & Trust Co.* v. *Long Pole Lumber Co.*, 70 W. Va. 558. They are bound to take notice of what their records disclose. *Third Nat. Bank* v. *Laboringman's M. & M. Co.*, 56 W. Va. 446; *Thompson* v. *Laboringman's M. & M. Co.*, 60 W. Va. 42, 53. The directors of the grocery company left its entire management almost entirely in the hands of Smith and Race. Neither they, the stockholders nor the creditors can deny the authority generally exercised by these two men at this late day.

Their authority to borrow money, assuming the transactions with the Farmers Bank were virtually loans from it, may stand upon a different footing, but, on the face of these transactions, the grocery company has received the benefit of the loans, if such the advancements were, in the extinguishment of its obligations to Hollingshead and Campbell, which effectually estops it from denying the authority of its agents in procuring them. As long as it retains the benefit of these transactions, it cannot free itself from the incidental and reciprocal obligation. *Union Bank & Trust Co.* v. *Long Pole*

*Lumber Co.,* cited; *Third Nat. Bank* v. *Laboringman's M. &
M. Co.,* cited.

### DAVIS TRUST COMPANY CLAIM.

Nothing is said in support of the cross-assignment of error
attacking the allowance of the Davis Trust Company's claim
for $11,500.00 and interest, founded upon a sight draft drawn
by the Smith-Race Grocery Company upon the Farmers Bank
in favor of the Citizens Dollar Savings Bank, credited to the
last named bank on the books of the Davis Trust Company
and returned to it unpaid by the Farmers Bank. This claim
was allowed by the commissioner, and the court, overruling
an exception to the allowance thereof, confirmed the report
as to it and provided for it in the decree. The draft was
regular on its face and came to the claimant in the regular
course of business and the Smith-Race Grocery Company
seems to have had the benefit of it in its account with the
Citizens Dollar Savings Bank. The Davis Trust Company
and the Farmers Bank were not in any way connected in
business. The former was a correspondent of the Citizens
Dollar Savings Bank and had been for a number of years.
A circumstance seemingly relied upon in the evidence, but
not advanced in argument, as ground of impeachment of the
demand, is a personal relationship between the president of
the Davis Trust Company and the cashier of the Citizens
Dollar Savings Bank. From this alone, it cannot be assumed
that they had equal knowledge of the affairs of a customer
of the latter bank or the misconduct of the officers and agents
of such customer. Part of another claim made by the Davis
Trust Company on account of notes held by it and endorsed
by the Smith-Race Grocery Company was allowed. In the
brief filed by its counsel, all of these notes are discussed but
there is no cross-appeal or cross-assignment of error predi-
cated on the disallowance of part of the claim. It concludes
with a request for affirmance of the decree. Hence, we do not
construe it as a cross-assignment of error.

ALLOWANCES OF COMMISSIONS TO TRUSTEES AND FEES TO
COUNSEL.

In the decree, the two trustees in the deed of assignment of
the Smith-Race Grocery Company for the benefit of its
creditors were allowed $15,000.00 for their services to the date
of the decree, in addition to their expenses previously paid
and amounting to $1,939.25, and counsel fees were allowed
amounting to $4,250.00, $1,250.00 to one firm, $2,500.00 to
another attorney, all representing the trustees and the gro-
cery company and $500.00 to an attorney of creditors, for
preparing the final decree. For the most part, the powers
and duties of the trustees were susceptible of delegation and
were in fact delegated, and, though both attorneys, they had
the advice, direction and assistance of counsel. While the
amount of the allowance to them was within the sound discre-
tion of the trial court, it is reviewable. We are of the opinion
that it is entirely too large, and that $5,000.00 is a reason-
able, fair and just allowance, under the circumstances, and
in the state of the evidence submitted as to their compensa-
tion. The commissioner made no finding as to their compen-
sation and there is nothing in the record that shows in detail
the work actually done or the time devoted to the trust sub-
ject. One of the trustees says the work took a very large
part of their time during practically two years, but this is a
very general statement. He says he thinks they should be
allowed the maximum commission usually paid in such cases,
seven and one-half per cent. On this subject there is no
arbitrary rule. In judicial and trustees sales, the commis-
sions are very much lower than that. The store was run by
hired help for about eight or nine months and then the re-
mainder of the goods was sold in lots. Just how these sales
were made is not disclosed. They may have been made by
employees under salaries charged as expenses. A lump sum
allowance of commissions should have a good solid founda-
tion in the evidence. A loose method in making such allow-
ances opens the door to the consumption of insolvent estates
in costs and expenses. Our practice affords no precedent for
a special allowance of a fee to an attorney for the prepara-
tion of a decree and, in view of the abuse to which such a

practice would be subject, we are not inclined to adopt or recognize it. The attorneys employed in the case should have drawn the decree in accordance with the court's conclusions. Such is the usual practice and the general charges for services are supposed to include that work. While the attorney who actually drew the decree did not represnt the trustees or the insolvent corporation, his work no doubt contributed as much toward the results of the litigation in which all the parties were interested, as did that of the attorneys to whom allowances were made. While this allowance of $500.00 as made cannot be sustained, we are of the opinion, in view of the magnitude of the interests involved, the nature and extent of the controversies developed and the work done, as disclosed by the record, that the $3,750.00 allowed the other attorneys in the case is not an unreasonable allowance for attorneys' fees in the case, but, since it should have covered the preparation of the decree, or such portion of the work of preparation thereof as it was incumbent upon these attorneys to perform, in connection with the others, it should have been so divided and distributed as to compensate for the preparation of the decree, as coming out of their allowances, not as an independent allowance for that service. Our conclusion, therefore, is to reduce the allowance made to Mason & Mason to $1,000.00, subject to a credit for the payment already made them, and the allowance made to E. M. Showalter to $2,250.00, subject to a credit for the amount already paid him, and to decree to Charles Powell the amounts so deducted, aggregating $500.00, for his performance of work they should have done.

It follows from the foregoing conclusions that the decree below, in so far as it adjudges appellant, The Standard Life Insurance of America, not entitled to the benefits and priority of its two deeds of trust, must be reversed, the exceptions to the commissioner's report thereon overruled and the report reinstated; and in so far as said decree overrules exception No. 1 of appellant, The Farmers Bank of Clarksburg, to the commisisoner's report and disallows the said claim of $47,510.44, it will be reversed, and said sum with interest thereon to May 10, 1917, the date of the decree,

amounting in the aggregate to the sum of $58,679.40, will be decreed to it, as a general and unsecured debt against the Smith-Race Grocery Company; and said decree will be so modified and reformed as to provide for payment of said sum *pro rata* with the other general creditors, out of the assets of said company, available for such purpose. It will be further modified in respect to the allowances to the trustees and attorneys, agreeably to the conclusions herein stated.

*Affirmed in part. Reversed in part. Remanded.*