# CHARLESTON.

CITY BANK OF WHEELING *et als.* v. BRYAN *et als.*

Submitted February 23, 1915. Decided June 8, 1915.

1. COURTS—*Conflicting Jurisdiction—Receivers—Administration of Assets—Expenses.*

   Assets belonging to an insolvent corporation, for which a receiver has been appointed, are in *custodia legis,* and in the exclusive control of the court appointing such receiver. It alone has authority to administer the assets, and to pass upon all matters relative to the receiver's expenses. (p. 483).

2. SAME—*Conflicting Jurisdiction—Receivers—Attorney's Fees—Allowance.*

   Attorney's fees are classed as the receiver's expenses, and his employment of attorneys to prosecute suits in another court to collect debts due such insolvent corporation, under authority duly conferred on him by the court that appointed him, does not confer jurisdiction on such other court to decide what are reasonable fees to be allowed the attorneys for services in such suits and order them paid out of the funds thereby collected. (p. 485).

3. SAME—*Receivers—Expense of Adminitsration—Attorney's Fees—Priority—Jurisdiction to Allow.*

Proper attorney's fees, like other expenses of administration, take precedence over pre-existing liens on the funds, but they can be ascertained and allowed only by the court that appointed the receiver.   (p. 485).

4. RECEIVERS—*Expense of Administration—Allowance of Attorney's Fees—Notice to Creditors.*

Creditors interested in the funds should have notice of the attorney's claim for fees before the court determines the   amount thereof and directs them to be paid.   (p. 486).

(ROBINSON, PRESIDENT, and MILLER, JUDGE, dissenting.)

Appeal from Circuit Court, Marion County.

Suit by the City Bank of Wheeling and others against W. J. Bryan and others.  From the decree, defendant John A. Howard, special receiver, appeals.

*Reversed and rendered.*

*J. M. Ritz,* for appellant.

*John J. Coniff,* for appellees.

WILLIAMS, JUDGE:

John A. Howard, receiver for the First Citizens Bank of Cameron, an insolvent corporation, has appealed from a decree entered by the circuit court of Marion county, on March 18, 1914, allowing to T. S. Riley and to the law firm of Caldwell & Caldwell certain attorney fees, and holding that said fees constituted a lien upon funds, realized from assets in his control as such receiver.  The funds were collected in two suits, brought in Marion county circuit court by said bank, against W. J. Bryan and others, in October, 1903, shortly before the receiver was appointed.  Appellant was appointed receiver, in December 1903, by the circuit court of Marshall county, in a suit brought by Michael Benedum against the First Citizens Bank and others, for the purpose of winding up the bank's affairs, and was authorized, by the order appointing him, to prosecute such suits as were deemed necessary to collect the bank's assets.  No contract appears to have been made between the receiver and said attorneys, but they continued to prosecute said suits for a number of

years, and until their successful termination. They were attachment suits in equity, to collect a number of notes held by said bank against W. J. Bryan, and attacking, as fraudulent, a conveyance made by him to his daughter, of valuable coal property, then being operated by the Fairmont Coal Company under a lease for a long term of years. Those suits were consolidated with others, brought for a similar purpose, by other suitors. They were bitterly contested and long continued, and were decided adversely to the bank, by the circuit court, and then appealed to this court, resulting in a reversal of the decree. The amount finally recovered by the receiver was something over $42,000. These are proper matters for consideration by the court in determining the value of the attorneys' services. But, in our view of the case, we are not now called upon to review the reasonableness of the fees. Appellant was not the receiver of the court that allowed the fees, and the question presented by this appeal is: did the circuit court of Marion county have jurisdiction to determine the amount of compensation to be paid to attorneys for services rendered in that court for the receiver of another court, and direct it to be retained out of the funds collected? Respect for the overwhelming weight of judicial authority compels us to give a negative answer to the question.

A receiver is the officer of the court that appoints him, and derives all his authority from its decrees and orders, and is accountable to it alone for the faithful administration of his office. Immediately upon his appointment and qualification he is vested with the right to the possession and management of the assets to be administered. This is especially so in the case of an insolvent corporation. The property of which a receiver has charge is in *custodia legis*. His appointment and qualification is a sequestration of the property by the court, for the purpose of administering it for the best interests and protection of the rights of all persons interested in the estate. His possession is the court possession, and he is subject only to its orders. His appointment, however, does not destroy existing rights or priorities of creditors, but prevents the acquisition of priorities thereafter. Says Judge Baldwin, in *Beverly* v. *Brooke et al.*, 4 Grat. 206: "The receiver appointed is the officer and representative of the Court, subject to its

orders, accountable in such manner and to such persons as the Court may direct, and having in his character of receiver no personal interest, but that arising out of his responsibility for the correct and faithful discharge of his duties.'' See also High on Receivers, Sec. 1; and 34 Cyc. 237. A receiver has no authority to employ counsel, unless authorized by the court; and, being the officer of the court that appointed him, he is required to report to, and settle his accounts in, that court, not in some other, for no other court has any jurisdiction over his official conduct. The bringing of the suits in the circuit court of Maron county did not give that court jurisdiction or control of the funds belonging to the insolvent bank. The circuit court of Marshall county had acquired jurisdiction of all its assets, no matter what their character or where situated, by the appointment of the receiver. High on Rec'rs., Sec. 48; and 34 Cyc. 199. The prosecution of the suit in Marion county was pursued by the receiver as a necessary step, authorized by the court that appointed him, to collect the assets to be administered. He had a right to sue in any court having jurisdiction of the subject matter; and the suit was brought in that county because the property was there which he sought to subject to the payment of the debts due the bank, but that did not give the court of that couny jurisdiction to administer the fund collected by means of the suit, or to adjudicate what liens, if any, existed upon it. Having obtained control of all the bank's assets, of whatever kind or character, by the appointment of its receiver, the circuit court of Marshall county was entitled to retain such control until the end of litigation, to the exclusion of interference by any other courts of concurrent jurisdiction. High on Rec'rs., Secs. 139-142; *Railway Co.* v. *Love,* 61 Kan. 433; *Savings Bank* v. *Simpson,* 22 Kan. 414; *Porter* v. *Kingman,* 126 Mass. 141; *Pelletier* v. *Lumber Co.,* 123 N. C. 596; *Pacific Railway Co.* v. *Wade,* 91 Cal. 449; and *Smith* v. *Effingham,* 2 Vevan. 232. So jealously does the law guard the jurisdiction of the court whose officer the receiver is, that it does not allow the property to be taken out of its control to satisfy the lien of a pre-existing execution, or to be sold for taxes, but that court itself, in administering the assets, will protect such prior rights. *Walling* v. *Miller,* 108 N. Y. 163; *In re*

*Tyler,* 149 U. S. 164; *American Trust etc. Bank* v. *McGettigan, Rec'r.,* 152 Ind. 582; and High on Rec'rs., Secs. 140 (a) and 141. The determination of all questions relating to priorities and liens upon the fund, including the lien of the attorneys for their fees, if they had any, a question which we deem it unnecessary now to decide, were questions properly to be determined by the circuit court of Marshall county. By performing services for its receiver, in the prosecution of the suits, the attorneys were in reality serving the court that appointed· him; and, no agreement having been previously made as to the amount of their fees, it had the right to determine what was a just and reasonable compensation for their services, and direct the receiver to pay it out of any funds in his hands, as a part of his administration expenses. Reasonable attorney fees, like other proper expenses incurred by the receiver, are preferred claims and take precedence over pre-existing liens. This court held in *Crumlish's Adm'r.* v. *Railroad Co.,* 40 W. Va. 625, that: ''The amount of such counsel fees is within the sound discretion of the court, subject to review on appeal. Such fees are allowed to the receiver, not the counsel.'' Attorney's fees for services rendered to a receiver of court are never allowed directly to the attorney, but to the receiver as a part of his expenses. *Stuart* v. *Boulware,* 133 U. S. 78; High on Rec'rs., Sec. 805; 34 Cyc. 465; *Matter of Commonwealth Fire Ins. Co.,* 32 Hun. 78; *State* v. *Railroad Co.,* 4 Braxt. (Tenn.), 92; *Olson* v. *State Bank,* 72 Minn. 320; and *Joost* v. *Bennett,* 123 Cal. 424. In the case last cited the court held that the attorney had no right of action for his services, but that, if he was entitled to fees, they should be allowed by the court to the receiver as a part of his expenses. The rule seems to us a wholesome one. It avoids confusion in the settlement of the receiver's accounts, and conflict of jurisdiction between courts concerning what claims and the amounts thereof, that are properly allowable as receiver's expenses. But the court, having the right to determine counsel fees, can not do so arbitrarily. It must decide the matter upon proper proof concerning the value of the services, for the court's discretion in that regard is a proper subject of review upon appeal.

The suits in Marion county were brought in October, 1903,

and the receiver was appointed in the December following. Hence, a very small part of the services must have been performed when the receiver took charge, and whatever contract the attorneys may have had with the bank terminated upon his appointment. *Griffith* v. *Boom & Lumber Co.,* 46 W. Va. 56. But if he expressly retained them, or permitted them, without objection, to continue the prosecution of the suits, which resulted so beneficially to the estate, they are surely entitled to a just and reasonable compensation. *Weigand* v. *Supply Co.,* 44 W. Va. 133.

It matters not that the circuit court of Marion county was more familiar with the proceedings in the suits, and was, therefore, in a better position to judge of the value of the attorneys' services than the circuit court of Marshall county. That could not confer jurisdiction. Evidence was taken to prove the reasonableness of the fees, but the court below not having jurisdiction, its decree was void; and it is not proper for us to review it as to the reasonableness of the fees allowed. The point is, that, evidence being necessary, in any event, to enable any court to decide upon the reasonableness of attorneys' fees, it could as well be produced before the court of Marshall as before the court of Marion county. Hence it is no argument in favor of jurisdiction in the last named court to say that it was better prepared to decide the matter because the services of the attorneys had been therein rendered.

If the court could have properly entertained the attorneys' petition, it was not proper to pass upon the allowance of their fees without giving the parties interested in the fund notice and an opportunity to be heard. High on Rec'rs., Sec. 805. This is another reason for holding that only the court that appoints a receiver has any right to decide upon the reasonableness of fees proper to be allowed to his attorneys. Such questions usually arise in the settlement of the receiver's accounts, which are invariably made in the court of his appointment.

That portion of the decree of March 18, 1914, appealed from, which finds that T. S. Riley, is entitled to an attorney's fee of $6,000 and the firm of Caldwell & Caldwell a fee of $4,000. and directs the Fairmont Coal Company, garnishee,

to pay to them said sums out of the $42,869.95 in its hands, decreed to the First Citizens Bank, and the decree of April 28, 1914, are reversed, and a decree will be entered here directing the aforesaid sums to be paid by said garnishee to John A. Howard, special receiver.

<em>Reversed and rendered.</em>

MILLER, JUDGE, *(dissenting)*; ROBINSON, JUDGE, *(concurring)*:

The sharp and distinctive point presented for decision is not whether assets in the hands of a special receiver are in custodia legis, and subject to the jurisdiction of the court appointing him; nor whether attorney's fees for services rendered a special receiver generally, are properly allowed to him as part of his expenses of administration; but whether on the appointment of a special receiver, by the circuit court of one county, the circuit court of another county is thereby deprived of the jurisdiction and authority which it otherwise would have to settle and enforce the lien of an attorney for services rendered in a suit begun and pending therein at the time of such receivership, on the judgment or decree recovered therein, and to invest in the court appointing such special receiver sole and exclusive authority and jurisdiction in the premises, and where, as in this case, and by the distinct order of the court appointing him, such special receiver continues the prosecution of such suit in the court where pending, not in his name, but in the name of the insolvent debtor, and after years of litigation, the money adjudged to plaintiff is brought into that court by the services of the same counsel and is ready for distribution. The facts assumed in so stating the question are fully shown by the record.

It is settled law by repeated decisions of this court, beginning with *Renick* v. *Ludington,* 16 W. Va. 378, and ending, perhaps, with *Burkhart* v. *Scott,* 69 W. Va. 694, that: "An attorney has a lien on the judgment or decree, obtained by him for his client, for services and disbursements in the case, whether the amount of his compensation is agreed upon or depends upon a quantum meruit." Indeed the rule is as old as the common law itself. Weeks on Attorneys at Law,

609, et seq. And in the case last cited, opinion by Judge WILLIAMS, supported by the many decisions cited, it was decided, point 3 of the syllabus, that: "An attorney's remedy in such case (collusive settlements) is not in equity by injunction, but he can apply to the court in which the action is pending, and ask to have the case proceed to final judgment in the name of the client, for his own benefit." According to *Fisher* v. *Mylius*, 62 W. Va. 19, opinion by Judge POFFEN-BARGER, an attorney has such an interest in a judgment or decree obtained by him, that he can be compelled to contribute to the expenses of his client incurred in another suit in equity to recover the amount of such judgment. Where such is the legal relationship between attorney and client, with respect to a recovery, the lien of the attorney on his client's judgment is in effect the same as if the client had assigned it to him as collateral security for fees and disbursements. 2 R. C. L. 1079. In some states the lien with proper proceedings prescribed for its enforcement is provided by statute. But without statute the lien exists and is enforceable in the suit in which the services were rendered.

So far as my investigation has gone our decisions do not furnish a precedent for allowance of counsel fees for services rendered a special receiver outside of the suit in which the receiver was appointed. The general rule, however, is that the lien for attorney's fees must be enforced in the court wherein the services for which the lien accrued were rendered. 2 Thornton on Attorneys at Law, section 654. Citing many cases English and American. This rule is recognized, I think, in *Burkhart* v. *Scott*, *supra*. In *Oishei* v. *Pennsylvania R. Co.*, 102 N. Y. Sup. 368, it was decided that the state court where the suit was brought did not lose jurisdiction to enforce such lien on the proceeds of a settlement made by the parties, though before such settlement the action had been removed to the federal court. To the same effect is *Central Railroad &c. Co.* v. *Pettus*, 113 U. S. 116. Where a lien was asserted by solicitors on amounts decreed to others than their immediate clients, who came into the suit prosecuted for the benefit of plaintiffs and all other creditors who would come in and contribute to the expenses of the suit, it was decided in the Pettus Case, agreeably to *Trustees* v. *Greenough*, 105 U. S.

527, that it was proper to give these solicitors a lien upon the property brought under the control of the court by the suit and the decree, such lien being authorized by the law of Alabama.

In *In re King,* (N. Y.) 60 N. E. 1054, it was decided that: "The state courts have power to determine the amount for which an attorney's lien should be established for services rendered a foreign trustee, who desires to remove the securities under the control of the courts in this state into another state, where a lien is claimed on such securities by attorneys for services rendered in this state." And agreeably to the rule stated in our case of *Burkhart* v. *Scott, supra,* the New York court says in the King Case: "If the thing recovered was in a judgment, and notice of the attorney's claim had been given, the court would not allow the judgment to be paid to the prejudice of the attorney. If paid after such notice in disregard of his rights, the court would, upon motion, set aside a discharge of the judgment, and allow the attorney to enforce the judgment by its process, so far as was needful for his protection. See, also, *Thompson* v. *Railroad Co.,* 45 N. Y. 468, 473; *Sheppard* v. *Steele,* 43 N. Y. 52, 3 Am. Rep. 660; *In re Regan,* 167 N. Y. 338, 60 N. E. 658." And in the same connection it is further said: "We are mindful of the authorities holding, in substance, that contracts made by foreign executors or administrators for the benefit of the state do not bind or create a charge upon the assets of the estate, but these cases have no application to the questions under consideration. The trustee now desires to remove the securities from this state into the state of New Jersey. The securities are under the custody and control of the courts of this state. He, as trustee, can become liable only for so much of the securities as the courts here determine to deliver over to him. The services of the attorneys claiming the lien were rendered in this state in an action pending in the courts of this state, resulting in a recovery of the property now sought to be charged with the lien. Our courts have jurisdiction thereof, and now have the power to determine what is fair and reasonable compensation, and the amount for which the lien should be established." I can see no reason why the

same rule should not prevail as between co-ordinate courts of the same state.

But the opinion of the majority says the assets of the bank, after the receivership, were in custodia legis; that the receivership annulled all existing executory contracts, and that thereafter no lien on such assets could attach or be acquired, even in favor of the counsel whose years of professional services were responsible for the large recovery and the money brought into the court where their services were rendered. I cannot concur in this proposition. The particular assets on which the lien was decreed were *in custodia legis* before the receiver was appointed. The suit in Marion County was an attachment suit in equity, and was brought to set aside fraudulent conveyances, and to sequester the property of Bryan and bring it or the proceeds thereof into court to satisfy the amount decreed. Many other creditors of Bryan were brought into that suit, and it became a general creditor's suit, all the funds being subject to the control and order of that court. And as already noted, Howard, receiver, by the distinct order of the court directing him, continued the prosecution of that suit. The court and receiver thereby submitted themselves to the jurisdiction of that court, and to be bound by its lawful orders and decrees. Numerous decisions of this and other courts say that assets of decedent in the hands of his personal representatives are in custodia legis, and cannot at law be attached or garnisheed in his hands. But such assets can be reached in equity in satisfaction of any lawful lien or claim against the same. See cases collated in 5 Ency. Dig. Va. & W. Va. Rep. 706. And many decisions say that an attorney's right to a lien is not affected by the fact that his client is an executor, administrator, or other trustee. *Burleigh* v. *Palmer,* 74 Neb. 122, 12 Am. & Eng. Anno. Cases, 777, and valuable note, p. 778, citing many cases.

What reason can there be then for attempting to differentiate and take special receivers out of the class of trustees and administrators generally? I can preceive none. In *Wipfler* v. *Warren,* 163 Mich. 194, it was held that a court substituting one attorney for another might properly preserve the lien of the first attorney on the funds and property in the hands of a special receiver, and that an order to that

effect could not be impeached by another court in an independent suit. In *Ward* v. *Craig,* 87 N. Y. 550, it was held that an assignment will not disturb the lien of an attorney on the property and funds brought into litigation. In *Louisville, &c., R. R. Co.* v. *Wilson,* 138 U. S. 507, it was ruled that the lien of attorneys on engines and rents therefor recovered was not disturbed ·by the appointment of a receiver of the railway company for whose benefit the recovery was had. And in *Central Railroad, &c., Co.* v. *Pettus, supra,* it was said that when an allowance to the complainant is proper, on account of solicitor's fees, it may be made directly to the solicitors themselves, without any application by the immediate client. So I think the opinion of the court is not well founded either on authority or correct legal principles.

The reason for the rule that money or other property in custodia legis cannot be attached or a lien thereon enforced at law, is that it disturbs the orderly administration thereof. But the application of that rule should not be made here, because appellant will only be chargeable with the net proceeds of the decree, after deducting counsel fees, and the administration of the trust fund can in no way be disturbed by the allowances to and deductions for counsel fees, in the distribution of the fund which the Marion County court is required to make. One of the reasons for the rule that the court in which the recovery is had and into which the money has been brought, is the proper tribunal to determine the amount and adjudge to counsel their fees, is that the court where the services are performed is best advised on that subject and more competent than any other court to make proper decree thereon.

The question is presented whether the court had jurisdiction of the parties. No process on counsel's petition was issued or served on Howard, receiver. The petition of the receiver, intervening, challenged the jurisdiction not on any question of fact, or as to the reasonableness of the fees decreed; but mainly for want of jurisdiction of the subject matter. Denying want of jurisdiction of the subject matter the court so far opened the subject on the filing of appellant's petition as to permit him to show cause against the reasonableness of the amounts allowed counsel, but which appellant

declined, electing to stand solely on the questions of jurisdiction. I think the receiver was entitled to be heard on the question of the reasonableness of the amount allowed counsel, but having declined when the opportunity to be heard was accorded him, there was nothing for the court to do but to confirm the report of the master to whom the cause had been referred, and decree accordingly.

I would, therefore, affirm the decree.