# CHARLESTON.

WINNIE M. JACOBS, *Adm'x, v.* FLORENCE WARD JACOBS *et al.*

(Two Cases) (Nos. 5398-A, 5398-B.)

Submitted October 28, 1925. Decided January 19, 1926.

1. ATTORNEY AND CLIENT—RECEIVERS—TRUSTS—*Generally Application for Allowance of Counsel Fees, and Trustee's and Special Receiver's Claims, May be Presented Informally by Petition or Motion.*

    Generally application to the court for allowances of counsel fees, and trustee's and special receiver's claims, in cases where such allowances are proper, may be presented informally by petition or motion, and without process against the parties to the suit; if the parties have actual notice, this is all that is required. (p. 618).

    (Attorney and Client, 6 C. J. § 335 [Anno]; Receivers, 34 Cyc. p. 473; Trusts, 39 Cyc. p. 497 [Anno].)

2. SAME—*Attorney Employed by Executor or Administrator to Prosecute Suit to Subject Realty of Decedent to Payment of Debts of Estate Held to Have no Retaining Lien or Charging Lien on Such Land or Proceeds Thereof.* •

    An attorney employed by an executor or administrator to prosecute a suit to subject the real estate of the decedent to the payment of the debts of the estate, has no retaining lien or charging lien on such real estate or the proceeds of the sale thereof made by him or otherwise. (p. 619).

    (Attorney and Client, 6 C. J. §§ 385 [Anno]; 397 [Anno].) •

3. EXECUTORS AND ADMINISTRATORS—*Decree Allowing Executrix's Attorney Fees for Services in Suit to Subject Decedent's Land to Debts of Estate Held Error.*

    Nor was the court below, upon principles of equity, or upon any principles, justified in decreeing to plaintiff's attorney, to

be paid out of the funds in his hands as special commissioner, the proceeds of the sale of said lands, the sum of $3,000.00 for services rendered in the cause. The will invested the executrix with power to sell the real estate to pay the debts if necessary, and no suit was necessary for any purpose, the statute providing ample means for auditing the accounts of the executrix and the claims of creditors.   (p. 620).

(Executors and Administrators, 24 C. J. § 931 [Anno].)

4.  SAME—*Allowance of Any Compensation to Attorney Representing Creditors of Estate in Way, Inconsistent with Obligations to Executrix Held Error.*

And under the facts and circumstances disclosed in this case, and particularly the fact that the plaintiff's attorney undertook to represent creditors of the estate of the decedent in a way wholly inconsistent with his duties and obligations to the interests of the estate, it consituted reversible error for the court to allow him any compensation out of the proceeds of the sale of the lands belonging to the said estate.  (p. 623).

(Executors and Administrators, 24 C. J. § 931 [Anno].)

5.  APPEAL AND ERROR—DEPOSITS IN COURT—*In case of delay of Several Months Before Decree of Distribution of Proceeds of Real Estate Can be Executed, Trial Court Should Invest or Loan Funds; Failure of Trial Court to Invest or Loan Funds from Sale of Real Estate Subject to Distribution May be Corrected on Appeal.*

Where pending an appeal and supersedeas, it is apparent that several months must elapse before the decree of distribution of the proceeds of the sale of real estate sold in the cause can be executed, the court below, on the application of the parties interested therein, should invest or loan out the funds in the hands of its special commissioner or special receiver, thereby to protect the interested parties from loss -of interest on the fund and consequential damages; and its failure to do so may as far as possible be corrected here on appeal.   (p. 624).

(Appeal and Error, 4 C. J. § 2829; Deposits in Court, 18 C. J. § 31 [Anno].)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Appeal from Circuit Court, Marion County.

Petition by Winnie M. Jacobs, executrix of George M. Jacobs, deceased, for assignment of dower, opposed by Florence Ward Jacobs and others.   From part of a final decree

awarding Harry Shaw, attorney for the petitioner, counsel
fees to be paid out of funds in his hands as special commis-
sioner, Morgan Billingsley and others appeal. From a sup-
plemental decree dismissing a petition of M. L. Hutchinson
and others with respect to investment of cash payments made
on realty of decedent sold in the cause, the First National
Bank of Point Marion and others appeal.

*Decrees reversed; cause remanded.*

*Tusca Morris, Meredith & Bell, M. W. Ogden, Charles
Powell, Brooks S. Hutchinson, W. H. Conaway, Frank C.
Haymond, Trevey Nutter, A. J. Colborn,* and *George Hen-
derson,* for appellants.

*Harry Shaw,* for appellee.
*Harry Shaw,* amicus curiæ.

MILLER, JUDGE:

This appeal is by Morgan Billingsley and ten banking in-
stitutions, creditors of the estate of George M. Jacobs, de-
ceased, from so much of the final decree of February 4, 1925,
as decrees to Harry Shaw, attorney for Mrs. Winnie M.
Jacobs, Executrix, plaintiff, the sum of three thousand dol-
lars ($3,000.00) to be paid out of the funds in his hands as
special commissioner, the proceeds of the sale of the real estate
of said decedent, decreed to be sold by him in said cause.

The record shows that the decree in favor of said Shaw
was pronounced solely upon his ex parte affidavit presented
and filed in the cause after the report of the master commis-
sioner and the decree thereon settling the accounts of the
executrix and determining the real estate owned by the dece-
dent and the debts and liens and the order of their priority
thereon. There was no formal petition or other pleading pre-
sented by said Shaw, nor any process summoning appellants
or other interested parties to answer the same. The claimant
to this allowance relied solely upon said affidavit and what
the record of the cause disclosed, as to the amount and value

of his professional services rendered in the cause on behalf of plaintiff therein.

In their petition for appeal presented in this court and assigning error in the decree, the whole record in the cause is vouched as the foundation for their opposition to the allowance of counsel fees out of said funds. They call our attention to the fact that the suit was instituted by said Shaw on behalf of the executrix in 1916, and allowed to drift along, with but little, if anything, being done until May 15, 1919, when a guardian ad litem was appointed for the infant defendant Florence Ward Jacobs, and a decree of reference entered, which was never executed on account of the death of the commissioner to whom the cause was referred, and that nothing of consequence was done thereafter until in 1921, when another decree was made appointing another commissioner to execute the decree, who because of other duties was unable and failed to do so, so that the cause was not further prosecuted until on September 16, 1921, when the cause was referred by another decree to Clay D. Amos, who proceeded and made up his report on the matters referred to him, and which report showed payments by the said executrix to said Shaw for professional services, and for which he had given her credit in her executorial accounts, sums aggregating $3,725.25.

It was further pointed out in said petition that said Shaw by the decree of sale of said real estate, consisting of a large office building in the City of Fairmont and a residence property, had been appointed special commissioner to make sale thereof, and from which he realized for said office building $151,000.00, and for the residence property, purchased by the widow and executrix, the sum of $22,000.00, and that said Shaw was allowed and decreed as said special commissioner for making said sales the sum of $8,658.00.

The petition directs attention to the fact that on the filing of appellees affidavit for an allowance of $3,000.00 additional out of said funds, petitioners appeared by counsel and objected, and protested against such further allowance for instituting and prosecuting said suit, but that the court, by the decree complained of, made the additional appropriation of

said sum to said Shaw, whereby appellants were deprived of that amount as a credit upon the sums decreed to them in said cause, which debts aggregated a sum in excess of $200,-000.00.

The specific errors assigned and relied on to reverse the decree, set forth in the petition and reiterated in the brief of counsel are:

First, the consideration of the motion of said Shaw, and .of his affidavit in support thereof, and the allowance to him out of said funds of the additional sum of $3,000.00.

Second, the allowance of said additional sum of $3,000.00 out of said funds and directing payment thereof before applying any of said funds to the payment of the debts decreed in favor of appellants, the creditors of said estate.

Third, for errors apparent on the face of the record.

Though not mentioned specifically in said petition or brief, counsel in oral argument urged as an additional ground for reversing the decree and denying the additional allowance to appellee, that it appeared from the record that while acting as attorney for said executrix in the institution of this suit and professing to represent said estate therein, the record in the cause shows that he had represented before the commissioner interests antagonistic to said estate, and had appeared and proved before said commissioner claims against the estate, which had gone undefended by him or other counsel, as follows: Charles W. Robinson, $7,634.17; First National Bank of Mannington, $7,148.35; First National Bank of Frostburg, Maryland, $14,321.34; and Dora L. Holt, $5,-517.78; aggregating $34,812.18. Furthermore, the record discloses, in a petition filed in the cause by said Winnie M. Jacobs, setting up a claim of dower in said real estate, regardless of the provisions made for her in the will, that Victor A. Shaw, a son of said appellee, appeared as her counsel, and the latter appeared as counsel for the defendant Charles W. Robinson, in opposition to the petition of Mrs. Jacobs, and also appears to have signed as counsel for the First National Bank of Mannington, the First National Bank of Frostburg, and Dora L. Holt, the joint and several answers of themselves and others to said petition.

In Mr. Shaw's affidavit filed on his motion for allowance of counsel fees, he says he acted as counsel for the plaintiff in bringing the suit, and is still acting for her; that he instituted the suit in 1916, and has been sole counsel for plaintiff therein from that time to the present; that he prepared the decree of reference and examined the several claims presented before the commissioner, and looked generally after the interests of the estate involved in said suit, in so far as it was his duty as counsel for plaintiff; that he examined the records of the clerk's office prior to bringing the suit, to ascertain what persons and corporations to make defendants and parties thereto; that he has never been paid any compensation for said services as counsel for plaintiff therein; that the fees mentioned in the report of Clay D. Amos, commissioner in chancery, as having been paid to him were for services other than those involved in this suit; that there were many other suits and proceedings and matters in which said estate was interested in which he acted as attorney for said executrix; that he verily believes the sum of $5,000.00 would be a fair fee for said services, considering the length of time the same had been pending, the amount involved, the number of creditors and the amounts of their claims, and the services rendered by him therein; and that he is certain the sum of $3,000.00 is a very low fee and consideration for his services in the premises, and which amount he asked the court to allow him in the decree confirming the sale, and which sum the court did allow him.

There was no process upon said affidavit, but as already indicated, the order filing it shows that the defendants and creditors represented by Messrs. Charles Powell, Tusca Morris, Meredith and Bell, M. W. Ogden and Brooks Hutchinson, being a very large portion of such creditors, in lieu of answer or the filing of a counter affidavit thereto, appealed to the record of the cause which shows the character of the suit, the date of its institution, the character of the bill prepared and filed, what had been done in the cause to the present time, the number of days plaintiff and her counsel were required to attend before the commissioner, the evidence

taken, and the commisisoner's finding and report, all of which the court was requested to consider on appellant's motion.

The first proposition urged on the hearing here was, that the decree in favor of Mr. Shaw is erroneous, if not absolutely void, for want of pleadings and proofs to sustain it. In this contention counsel would apply to a summary proceeding of this character the rules applicable to pleadings and proofs in suits in equity generally. The basis of appellee's claim is his supposed right to charge the funds in his hands as commissioner of the court with the value of his services as attorney for the plaintiff, in other words, upon a trust fund brought into court in a suit begun and prosecuted on behalf of all parties concerned. We do not think that such strict rules of practice have been required or followed in this state or in other states where, in the winding up of corporations, the settlement of decedent's estate and the like, counsel for plaintiffs have been adjudged entitled to be paid for their services out of trust funds brought into court by their professional services. There can be no doubt of the general rule contended by for counsel, as the numerous decisions of this court cited by them, clearly establish. Generally, claims for allowance of counsel fees, and trustees' and special receivers' claims, in cases where such allowances are proper, are presented informally by petition or motion, and generally without process. Such seems to have been the practice observed in *Fowler* v. *Lewis's Admr.*, 36 W. Va. 112; *Schmertz* v. *Hammond*, 51 W. Va. 408, 414; *Hartley* v. *Woodenware Co.*, 82 W. Va. 780, 797; *Central Railroad and Banking Co.* v. *Pettus*, 113 U. S. 116; *Trustees* v. *Greenough*, 105 U. S. 527; and *Farmers Loan & Trust Co.* v. *McClure*, 24 C. C. A. 64. The case more strongly relied on than others affirming the general rule is *Bank* v. *Bryan*, 76 W. Va. 481, the fourth point of the syllabus holding that: "Creditors interested in the funds should have notice of the attorney's claim for fees before the court determines the amount thereof and directs them to be paid." There is no question about the fact of notice to appellants in this case. They appeared to the motion and interposed objection thereto, and to the filing of the affidavit. The main point of controversy in the *Bank* v. *Bryan* case was

whether the court of another county than that in which receivers had been appointed, but in which the receivers had been authorized to appear and prosecute the suit which had resulted in recovering the funds out of which counsel sought their allowance, could make such award out of the funds recovered, or that the court appointing the receivers and engaged in administering the property of an insolvent bank had jurisdiction to determine the right and amount of the fees of counsel responsible for the recovery. Of course creditors are always interested in such proceedings and should have notice. In the case of *Colley* v. *Wolcott*, 109 C. C. A. 425, involving the question of an allowance to plaintiff or his solicitors for fees, it is said: "It would have been better practice if a formal motion had been made for the allowance of the solicitor's fees. * * * But this is a matter of practice resting largely in the discretion of the trial court, and its exercise one way or the other cannot be assigned for error." And referring to the practice observed in *Farmers Loan & Trust Company* v. *McClure, supra,* and to the fact that the court had knowledge of the facts from the proceedings in the cause, it is said: "Upon this knowledge it could properly act in fixing the value of the solicitors' services."

But is this a case in which the court was authorized or justified in decreeing counsel fees out of the funds in control of the court? It is objected to this allowance in the first place, that the funds in Shaw's hands subject to the order of the court are the proceeds of the sale of decedent's real estate, and that those funds continue to be real estate not recovered by aid of counsel nor subject to any lien thereon for counsel fees. For this proposition the cases of *Fowler* v. *Lewis's Admr.,* and *Schmertz* v. *Hammond, supra,* are cited and relied on. In the first case Swann, who had been counsel for some of the parties and who had been instrumental in defending the land sold against the claims of third persons, was denied any right to charge his services upon the fund because he had no lien thereon. He had not recovered the land and did not have an attorney's retaining lien nor a charging lien thereon, as distinguished, explained and defined in the opinion. But here, as in the *Fowler-Lewis case,* it is apparently contended that

as the fund is in the hands of the court and subject to its orders, being a court of equity, it has the power to dispose thereof at will. But referring to *Cooke* v. *Dealey,* 22 Beav. 196, Judge Brannon says of land sold under a decree, "the sale converts the land into personalty 'only to the extent of the object required, but beyond that the rights of all parties' remain the same as if no conversion or sale had taken place.'" The comment of Judge Brannon in that case, at page 153, is quite pertinent: "I can not concur in establishing the doctrine that when a fund belongs to an estate, simply because it is in the hands and power of a court, it shall be made to pay the fees of all the attorneys—plaintiff's or defendant's—connected with the case. If a dead man's estate is before the court, shall attorneys who may have resisted some claims against the estate be allowed large fees as a lien upon the assets? I know no law for it. Establish the practice, and the door is open wide to the demand of exorbitant fees, to the ruin of estates—taking from widows and children moneys which should sustain and comfort them." The affidavit in this case is meager, and as we have observed, is couched in the most general terms. There is no showing that the executrix had agreed to the sum demanded, or in fact had ever been consulted about it or had notice of the claim. Appreciating the fact that the record showed petitioner had been paid by the executrix large sums of money for which she had been given credit in her settlement before the commissioner, aggregating $3,725.25, for which no vouchers appear in the record, and that some explanation was advisable, appellee contents himself with the general allegations in his affidavit, that these payments were for other services. The executrix was examined before the commissioner, but produced no vouchers for her disbursements, nor itemized bills of any kind. Whether these were proper payments for the service of counsel, and the nature of the service, was not shown. No one but plaintiff and appellee seems to have been present at this examination, but as no exceptions were interposed by creditors, they must be accepted as proper disbursements. We are concerned here simply with the allowance for counsel fees in this particular case. Counsel certainly had no retain-

ing lien or charging lien on the funds arising from the proceeds of the sale of the lands. But was the court justified on principles of equity in appropriating the sum decreed, or any sum, to the payment of these fees? As to the propriety or legality of the particular sum, $3,000.00, we find nothing in the record justifying such a large allowance. In the first place, we inquire, why was any suit necessary? The will of the decedent empowered the executrix to sell and convey by proper deed sufficient of his real estate to pay off all his debts. There was no necessity to resort to a court of equity for that purpose. The statute on fiduciaries generally provides all the machinery necessary to settle the accounts of the executor and to convene the creditors and distribute the personal assets to those entitled thereto. So that the record presents not the slightest necessity to bring a suit for any of the ostensible purposes of the bill. The bill as proposed and presented is purely formal; it occupies less than three printed pages of the record; and while it names as defendants a number of creditors, there are no allegations as to the amounts of their claims, nor whether valid or invalid; it presents no issues to be determined between them or between them and the estate. Nor was there any contest made before the commissioner as to any of them—nothing calling for any special services of counsel. Indeed the record before the commissioner noting appearances of parties and counsel, fails to show the presence of plaintiff's counsel at any session when these debts were proven, save and except when he appeared for the several creditors represented by him, and examined them before the commissioner, claims as shown, aggregating nearly $35,000.00. Whether there was any defense to any of these claims does not appear; if there was any defense, none was made. It was the duty of the plaintiff to interpose all legal defenses thereto. Her counsel representing the creditors was not in position to do so; he represented conflicting interests. There may have been no defenses; but whether so or not does not relieve counsel for undertaking to represent both sides of a case. There are cases in which there would be no such a conflict, as for example, in a judgment creditors' suit brought by one creditor on behalf of all attacking a fraudulent conveyance. In such

a case equity would arrange all creditors on the same side of the suit; and in such a case there would be no impropriety in the same counsel representing all creditors, unless per chance a conflict should arise between some one or more of them, when the propriety of his representing either would be presented.

But if it were proper to make any allowance out of the proceeds of the sale of the real estate, there is nothing in the record justifying the amount awarded counsel in this case. An award of $500.00 would have been a most generous one for all services rendered by him so far as the record discloses, and if a greater allowance was due him, the record should have shown the justice of it. The comment of Judge BRANNON in the *Fowler-Lewis case* is particularly applicable. During the oral argument, in which counsel was represented by himself, inquiry was made of him as to who should pay him for his services in behalf of the several creditors represented by him. His answer was that they would pay him. As the proceeds of the sale will not be sufficient to pay all the debts decreed against the estate, if he should be allowed the large sum awarded him by the decree, a portion of it would come out of the amounts distributable to his creditor clients; then out of the sums received by them they would be subjected to another deduction. It was also suggested by appellee in argument, that practice of this kind was common among attorneys practicing in the lower court. This fact was challenged by opposing counsel. But if it is a fact, is it not proper that such practices should now as heretofore be discountenanced? As early as *Trustee* v. *Greenough,* 105 U. S. 527, Mr. Justice Miller challenged the practice of making large allowances to attorneys out of trust funds, as a gross judicial abuse of the present day, namely, the absorption of a property or a fund which comes into the control of a court by making allowances for attorney's fees and other expenses. This court has approved this principle in *Lynch* v. *Spicer,* 53 W. Va. 426, 430, and in *Hartley* v. *Woodenware Co.,* 82 W. Va. 780, 797-799.

The question finally presented is, whether under all the facts and circumstances any allowance should be made to Mr. Shaw in this case. The very rigid rule against such dual

representation of conflicting interests, applicable to attorneys at law, is applicable also to agencies in general. *Guthrie* v. *Huntington Chair Co.*, 71 W. Va. 383; *Truslow* v. *Parkersburg Bridge Etc. Co.*, 61 W. Va. 628; *McDermott* v. *Fairmont Gas & Light Co.*, 88 W. Va. 692. But in cases of dual agency, the agent may be entitled to compensation from both parties, for example where the agency is to buy and sell real estate, if both parties consent beforehand or afterwards ratify the double agency. With respect to attorneys at law, the rule denying compensation seems to be very rigid, as we observe from all the decisions on the subject we have been able to find. *William J. Strong* v. *International B. L. & I. Union et al.*, 82 Ill. App. 426, and cases cited; *Hughes* v. *Dundee Mortgage & Trust Invest. Co.*, 21 Fed. 169; *Mann* v. *Bradshaw*, 136 Va. 351. In Virginia, as shown by the last case cited, there is a statute inhibiting courts from making any decree or order for fees or compensation to counsel to be paid out of money or property under its control, unless the claim therefor be stated in the bill, petition or other proceeding, of which all parties interested shall have due notice, or unless all such parties be notified in writing that application will be made to the .court for such decree or order. In the Virginia case cited, the court, reversing the decree below allowing counsel fees, held that a decree awarding compensation to an attorney for the administration of an estate can not be sustained when there is nothing to show that such services were rendered for the administrator independent and distinct from the services rendered by such counsel to other clients, creditors of the estate, in a creditors' suit. In that case the plaintiffs were two of the creditors suing on behalf of themselves and all other creditors, to which the administrator was made a party defendant.

But who in this case is entitled to object to the allowance? Generally the objection is interposed by one or the other, or both of the parties, so dually represented. Sometimes the parties with a grievance of this kind may waive it. But where, as in this case, any allowance to the attorney will to that extent detract from the sum recoverable by the creditors affected, the conflicting representation, we think, may be taken

advantage of by any person whose interests were or might have been affected thereby. The question is one of public policy, against which the courts will not and should not permit any unwarranted invasion. *Strong* v. *B. L. & I. Union, supra,* and cases cited; 4 Cyc. 982. Our conclusion is that the court should not have allowed Mr. Shaw anything out of the funds arising from the sale of the decedent's lands.

In what has been said and determined in respect to the decree in favor of appellee, we must not be understood as intending to reflect on the honor or professional ethics of any of the parties concerned. We accept in good faith the statement of Mr. Shaw, that in procuring the decree in his favor, he was following a practice prevailing in the courts of his county, or at least so understood by him. Our simple response is, that if such a practice prevails, it ought to be corrected; and we doubt if a better case than this could be presented to declare our disapproval of the practice. Mr. Shaw has been most liberally rewarded for all his services in the cause; so no injustice will be done him in that regard. The decree in his favor will, therefore, be reversed, and the cause remanded for further proceedings in conformity herewith.

### Appeal No. 5398-B

This appeal was allowed on the petition of M. L. Hutchinson, the purchaser of the office building decreed to be sold in the main suit, Morgan Billingsley, a creditor, the First National Bank of Point Marion, Pennsylvania, and the other banks represented by Charles Powell and other counsel, from a supplemental decree pronounced on June 24, 1925, upon the petition filed by them in the circuit court, denying them the relief sought with respect to the investment of the cash payments made on the real estate of the decedent so sold in the cause, pending the determination in this court of the appeal from the decree entered in the said cause on February 4, 1925, denying the widow dower in the lands of the decedent.

The petition of these petitioners sets forth their interest in the said fund as purchaser and creditors; the fact that pending said appeal special receivers of said office building and of the rents and profits thereof had been appointed and qualified; that Mrs. Jacobs, the widow and executrix, had ob-

tained and perfected in this court an appeal and supersedeas from the decree denying her dower in said lands; that by reason of such appeal and supersedeas the cash payments by the purchasers of said real estate, representing some $43,240.00, would remain idle pending the several months intervening before said appeal could be heard and determined, with loss of interest amounting to from $400.00 to $500.00 per month, while the debts decree in favor of said creditors against the estate would continue to bear interest; and appealed to the court to exercise its authority to loan out said funds to the bank in which the special commissioner had the same deposited, at such rate of interest as the court should direct, and if necessary to accomplish the purpose, to appoint a special receiver to take charge of said money and loan out the same as might be decreed.

That such money is in *custodia legis,* and that the special commissioner to make the sale is simply an officer or arm of the court, and that the court has full power in the premises to so control and direct the investment of said funds, counsel refer us to *Abney Barnes Company* v. *Coal Co.,* 89 W. Va. 504, syl. 4, and the decisions therein cited and referred to; also to *Blair, Com'r.* v. *Core,* 20 W. Va. 265; *Ruhl* v. *Ruhl,* 24 W. Va. 279, syl. 1; *Whyel* v. *Coal & Coke Co.,* 67 W. Va. 59; *Bank* v. *Bryan,* 76 W. Va. 481; and *Crawford* v. *Fickey,* 41 W. Va. 544. These decisions not only define and determine the relationship of a special receiver or commissioner to the court appointing him, but also the power and authority of the court over funds brought into *custodia legis;* and they also indicate the duty of the court to exercise its jurisdiction and authority over the funds and property when so brought under its control, when appealed to by those interested therein, to preserve and protect the same and to save the parties from any unnecessary losses pending suspension of the distribution thereof to those entitled thereto; but as held, the court is not to be required to exercise these powers unless moved thereto by the parties in interest by appropriate action in the cause. *Darby & Co.* v. *Gilligan,* 37 W. Va. 59; *Bank* v. *Bryan, supra; Crawford* v. *Fickey, supra.*

And it is well settled that the authority and jurisdiction of the court, and its duty in the premises to loan out and preserve the funds and property so brought under its control, is unaffected by the pendency of the cause in an appellate court. *Beard* v. *Arbuckle,* 19 W. Va. 145; *Moran* v. *Johnston & Co.,* 26 Gratt. 108; *Spring* v. *South Carolina Ins. Co.,* 6 Wheat. 519.

The record in this case does not disclose the grounds for the court's refusal on appellants' motion to loan out the money so brought under its protection; and we perceive no valid ground therefor. Mrs. Jacobs perfected her appeal from the decree of February 4, 1925, which confirmed the sale of the real estate without having first provided for her dower interest therein; and it was apparent to the court that considerable time would elapse before such appeal could be matured for hearing and disposed of in due course; it was so alleged in the petition, and was not controverted. With power to act, the duty to act favorably followed unless some good reason appeared for refusing to do so. None appeared in this case. As a result some one must bear the loss. In argument, counsel for Mrs. Jacobs and creditors represented by him says that the court doubted its jurisdiction, and feared that if the money was loaned out it might not be able to promptly get the money in when required for distribution, and feared personal liability on the part of the judge if he acted favorably on appellants' petition. We think such could not have been the real grounds for the court's action. Another proposition advanced by counsel is that appellants were fully protected against loss of interest by the suspending bond and the appeal and supersedeas bond of Mrs. Jacobs, the widow and executrix. But if she procured and perfected her appeal within the time prescribed by the decree, there would likely be no liability on her suspending bond; and if she succeeded in reversing the decree, or so much thereof as she appealed from, what liability would there be on the appeal bond? Besides, if she should be rendered liable for any reason on said bonds, or either of them, for interest on the funds in the hands of the special commissioner, was not it the duty of the court to protect her, as well as others entitled to share

in the funds, against loss of interest or damages? We think the duty was apparent in the case here presented. Of course, there is always some discretionary power in cases of this character. Not all cases would call for the affirmative exercise thereof, but for an abuse of that discretion the decree denying the right is subject to review by the appellate court.

We are, therefore, of the opinion to also reverse so much of the decree of June 24, 1925, entered in said cause on the petition of said appellants as denied the relief prayed for therein and dismissed their petition; and the cause will be remanded to the circuit court for further proceedings to be had therein, in accordance with the rules and principles herein enunciated.

*Decrees reversed; cause remanded.*