Statement.

### Richmond.

Spiller and Others v. Wells and Others.

January 12, 1899.

Absent, Cardwell and Riely, JJ.

1. Conflict of Jurisdiction—*How Determined—How Jurisdiction Acquired.* Between courts of concurrent jurisdiction, except as to technical creditor's bills, that court which first acquires cognizance of the controversy, or obtains possession of the property in dispute, is entitled to retain it until the end of the litigation, and should decide all questions which legitimately flow out of the controversy. Jurisdiction is acquired by the issue and service of process, and, in case of conflict between courts of concurrent jurisdiction, the date of service of the process determines the priority of the jurisdiction. The first suit, however, must afford the plaintiff in the second an adequate and complete opportunity for the adjudication of his rights.

2. Mechanic's Lien—*Suit by Sub-Contractor—Act of Limitations as to General Contractor and other Sub-Contractors.*—A suit by a sub-contractor to enforce a mechanic's lien which has been duly recorded, to which the general contractor is made a party defendant, and his recorded lien properly set forth in the bill, stops the act of limitations from running not only on the complainant's lien, but also on the lien of the general contractor, and all claiming as contractors under him, and operates to suspend any further suit by any one or more of them during the pendency of the suit instituted by the sub-contractor.

Appeal from a decree of the Law and Chancery Court of the city of Norfolk pronounced June 21, 1897, in a suit in chancery wherein appellees were the complainants, and appellants were the defendants.

*Reversed.*

The opinion states the case.

*Geo. McIntosh,* for the appellants.

*Thos. W. Shelton* and *R. H. Baker & Son,* for the appellees.

KEITH, P., delivered the opinion of the court.

The facts with which we have to deal are as follows:

Appellants contracted with Wells to erect a three-story brick building in the city of Norfolk, which was completed on the 4th day of July, 1896. On the 30th day of August of that year, Wells perfected his lien as general contractor by filing in the clerk's office of the Corporation Court of the city of Norfolk an account showing the amount and character of the work done, the material furnished, the prices charged therefor, the payments made, and balance due, and a description of the property upon which he claimed a lien, all of which was duly recorded by the clerk.

At rules held in the clerk's office of the Court of Law and Chancery of the city of Norfolk on the first Monday in January, 1897, Wells filed his bill to enforce this lien. Appellants were made parties defendant, and into this suit came a number of persons claiming as sub-contractors under the plaintiff, and asking to have their rights protected.

William H. Barnard, doing business as Barnard & Co., also filed a petition in which he alleges that J. W. Wells, the general contractor, had contracted with him to do the tinning, iron work, and plastering, and to furnish the necessary terra cotta pipe and work for draining the building to be erected; that petitioner had fully complied with his contract with Wells, and had on the 31st of July, 1896, filed his mechanic's lien upon the building in the clerk's office of the Corporation Court of the city of Norfolk for $1,836.88, that being the balance due to him, and on the next day gave notice in writing to the owners of the property of the amount and character of the lien. Petitioner further avers that on the 26th of December, 1896, he instituted a suit in chancery in the Circuit Court of the city of Norfolk against Wells, the general contractor, and the owners of the building, to enforce his said lien; that

the Circuit Court thus acquired jurisdiction of the suit, of the parties thereto, and the subject-matter thereof. On the 28th and 29th of December process in said suit was duly executed on all the defendants, and from that time the Circuit Court had " exclusive jurisdiction of all matters growing out of the enforcement of the mechanic's lien against the property, and the settlement of all matters in controversy concerning said liens."

The prayer of the petition is that the suit instituted by Wells in the Court of Law and Chancery of the city of Norfolk to the first January rules, 1897, (which was Monday the 3d day of the month) may be dismissed, or that he may be restrained from further proceeding therein until the final disposition by the Circuit Court of the city of Norfolk of the suit instituted by petitioner.

By a decree entered April 10, 1897, the cause was brought on to be heard upon the petition of Barnard & Co. and of the sub-contractors, and the petition of Barnard & Co. was dismissed, and the cause referred to a commissioner to state certain accounts. The commissioner having reported in obedience to this decree, a further decree was entered on the first of July, 1897, ascertaining the amounts due the general contractor and the sub-contractors, and directing a sale of the real estate to satisfy their demand. From that decree appellants appealed, and the chief contention is that the court erred in rejecting the prayer of the petition of Barnard & Co.

In *Craig* v. *Hoge*, 95 Va. 275, this court had occasion to examine the law in relation to a conflict of jurisdiction between two courts having concurrent jurisdiction, and it was there held, Judge Riely delivering the opinion, that " that court which first acquired cognizance of the controversy, or obtains possession of the property in dispute, is entitled to retain it until the end of the litigation, and should decide all questions which legitimately flow out of the controversy; that jurisdiction is acquired by the issue and service of process, and, in

case of conflict between courts of concurrent jurisdiction, the
date of service of the process determines the priority of the
jurisdiction." It is further stated that technical creditor's
bills are exceptions to the general rule which pertains to a con-
flict of jurisdiction between courts of concurrent jurisdiction;
but as the bills before us· are not creditor's bills, but suits
brought to ascertain and enforce liens binding a specific piece
of property, we need not confuse or embarrass the discussion
by further reference to this exception. The rule established is
necessary to the orderly and decent administration of justice.
Nothing can be more unseemly than a struggle for jurisdiction
between courts; but a rule which rests for its support upon
considerations of convenience however great, and of decency,
order, and priority however exacting, must yield to the higher
principle which accords to every citizen the right to have a hear-
ing before some court. An essential condition, therefore, of
the application of the rule insisted upon as to priority of juris-
diction, is that the first suit shall afford the plaintiff in the
second an adequate and complete opportunity for the adjudica-
tion of his rights. When Barnard & Co. instituted their suit
in the Circuit Court, that court acquired jurisdiction over the
subject of litigation, and the parties to it. Wells, who after-
wards brought suit in the Law and Chancery Court, was made
a party defendant. His case is fully stated in the bill; that he
was general contractor for the erection of the building, and
that he had perfected his mechanic's lien, amounting to $6,-
788.20—the precise sum for which the lien is claimed by Wells,
in the account filed as an exhibit with his own bill. The lien
of Wells, of course, inures to the benefit of all sub-con-
tractors, so that they can also be amply protected in the Cir-
cuit Court.

While the suit in that court is not a general creditor's bill,
and did not affect the statute of limitations as to creditors not
named as parties to it, there can be no doubt that as to liens
claimed by parties to it, and directly involved in the suit, the

statute ceased to run upon its institution. The work was completed on the 4th of July, 1896, and it was necessary to sue within six months, that is to say, on or before January 4, 1897; but we are of opinion that it was not incumbent upon Wells to institute a separate suit in order to enforce his lien, but that he, and those claiming under him as sub-contractors, could be fully protected in the suit brought by Barnard & Co., and that the statute ceased to run as to the lien of the general contractor from its institution. If the stoppage of the statute by the suit in the Circuit Court had not that effect as to the sub-contractors, as well as the general contractor, their claims would have been barred when presented in the suit brought by Wells, for their petitions were not filed until the 9th of April, 1897, more than three months after the expiration of the six months within which it was necessary to bring suit.

We are of opinion that the general contractor could have had complete relief in the Circuit Court which first acquired jurisdiction over the subject of litigation and the parties to it; that from its institution the statute of limitations ceased to run as against his mechanic's lien and all claiming as contractors under him, and that, as a consequence, this case is controlled by the decision in *Craig* v. *Hoge, supra;* and the decree of the Court of Law and Chancery is therefore reversed.

*Reversed.*