MICHIGAN TRUST CO. *v.* NATIONAL BANK OF IONIA.

1. TRUSTS — INTERVENTION MUST BE IN SUBORDINATION OF MAIN PROCEEDING.

One attacking the validity of a trust may not intervene in proceedings under 3 Comp. Laws 1915, § 11588, for the appointment of a trustee to administer the trust, since, under 3 Comp. Laws 1915, § 12362, intervention must be in subordination to and in recognition of, the main proceeding.

2. COURTS—COURT ADMINISTERING TRUST PROPERTY MAY NOT BE DISPOSSESSED BY DECREE OF ANOTHER COURT.

Where trust property is in possession of a circuit court and is being administered by a trustee appointed by it, one attacking the validity of the trust may not, in an independent suit in another circuit, litigate the question of the lawfulness of such possession, and, if found unlawful, have decree turning possession over to him; the doctrine of receivership cases, that possession or control of the first court may not be ousted or interfered with in any way, being applicable.

3. EQUITY—ANCILLARY BILL—TRUSTS.

Where trust property is being administered by a circuit court through a trustee appointed by it, one questioning the validity of the trust may file an ancillary bill in the court having custody of the property.

4. APPEAL AND ERROR—INABILITY TO GIVE ANCILLARY BILL PROPER COGNOMEN NOT CAUSE FOR REVERSAL.

Where a bill is in reality an ancillary bill, the court will not reverse because unable to give it a proper cognomen.

Appeal from Kent; Perkins (Willis B.), J. Submitted October 6, 1927. (Docket No. 35.) Decided December 1, 1927.

Bill by the Michigan Trust Company, executor of

[1]Equity, 21 C. J. § 341 (Anno); Trusts, 39 Cyc. p. 288 (Anno); [2]Courts, 15 C. J. § 586 (Anno); [3]Equity, 21 C. J. § 667 (Anno); [4]Appeal and Error, 4 C. J. § 2901 (Anno).

the last will of William F. Sandell, deceased, and special administrator of the estate of Mary A. Sandell, deceased, against the National Bank of Ionia and others to set aside a trust deed.   From a decree dismissing the bill, plaintiff appeals.   Affirmed.

*George H. E. Smith* and *Knappen, Uhl & Bryant,* for plaintiff.

*Glenn D. Mathews* and *Jewell, Face & Messinger,* for defendants.

FELLOWS, J.   On November 8, 1904, Mary A. Sandell, a resident of Kent county, executed a purported indenture of trust by which she transferred to William F. Sandell, a resident of Ionia county, as trustee, her property upon the conditions named in the instrument, which need not be here detailed.   The trust was accepted and during his lifetime William F. administered it.   Both he and Mary A. are now deceased.   Plaintiff trust company is the executor of his last will and testament and special administrator of her estate.   Shortly after Mr. Sandell's death, one Chamberlin filed a bill in the Ionia circuit court, in chancery, under section 11588, 3 Comp. Laws 1915, and defendant National Bank of Ionia was appointed to execute the trust.   Defendant Lind is its trust officer.   Plaintiff, insisting that the trust attempted to be created is invalid for reasons stated, filed this bill in the circuit court for Kent county, in chancery, asking that it be so decreed.   The bill sets up the proceeding in the Ionia circuit and asks discovery by the bank and injunction *pendente lite* to restrain distribution or incumbrance of the property.   Defendant bank and its trust officer appeared specially and moved to dismiss the bill on the ground that the Kent circuit court, in chancery, had no jurisdiction.   From a decree dismissing the bill for this reason, plaintiff appeals.

It is urged on behalf of defendants that the property here involved is *in custodia legis,* in the hands of the Ionia court through the trustee appointed by it, and that another court of concurrent jurisdiction may not entertain litigation with reference to it, and that plaintiff should intervene in that case under the provisions of section 12362, 3 Comp. Laws 1915. We shall presently point out what we deem the proper practice to be followed in order to litigate the questions involved in this case, but intervention under this statute is not available to plaintiff to assert the claims here asserted. The statute requires that the intervention "shall be in subordination to, and in recognition of, the propriety of the main proceeding," and in at least two cases (*Chase* v. *Washtenaw Circuit Judge,* 214 Mich. 288, and *Sidebottom* v. *Calhoun Circuit Judge,* 202 Mich. 116) this court has held that intervention may not be had to question an attachment levied upon property standing in the intervenors' names but levied upon as the property of the defendant. In both cases under process of the court property had been attached; in both cases the title to the property was in the petitioners for leave to intervene. In the *Sidebottom Case* all members of the court agreed that petitioners could not intervene to move to dissolve the attachment, and in the *Chase Case* all agreed that petitioners could not intervene to try the title to the property. It is quite likely that these two decisions prompted the legislature to amend this section (Act No. 280, Pub. Acts 1923). The amendment has no bearing on the question here involved. Except as to cases falling within the amendment, the intervenor takes the case as he finds it. In the instant case the Ionia court had, by entertaining the bill, of necessity decided *prima facie* that a trust estate existed, and, by appointing a trustee to administer the estate, decided that it should be administered under the provisions of the section cited. Plaintiff claims there is no

trust; that the instrument attempting to create it is a nullity, and that, therefore, it, in its representative capacity, is entitled to the fund now in the hands of the trustee. Manifestly, the assertion of such a claim is not in "subordination" or in "recognition" of the propriety of the Ionia proceeding. It is quite true, as suggested by counsel for the moving defendants, that they would be estopped by their contention here from raising such question, but there are other defendants who could raise it, and we should in this case lay down the correct practice.

The property involved in this litigation is in the hands of the circuit court for the county of Ionia, in chancery, acting through its appointee as trustee. Under these circumstances we are of opinion that plaintiff may not, in an independent suit in the Kent circuit, litigate the question of whether such possession is lawful, and, if found unlawful, have decree of that court taking such property out of the possession of the Ionia court and turning it over to this plaintiff. The question has most frequently arisen in receivership proceedings, and counsel for appellee have cited us to a number of receivership cases, but, as we shall presently see, property may be *in custodia legis* although it be in the possession of some officer of the court other than a receiver, and in such cases the doctrine of the receivership cases applies. *Compton* v. *Jesup,* 68 Fed. 263, was a receivership case; the opinion is an exhaustive one, written by present Chief Justice Taft, then circuit judge. He said:

"Necessity and comity both require that where, by its officers acting under color of its order or process, a court has taken into its custody property of any kind, another court, though of equal and co-ordinate jurisdiction, should not be permitted either to oust the possession of the first court, or in any way to interfere with its complete control and disposition of the property for the purpose of the cause in which its action has been invoked."

In *City Bank of Wheeling* v. *Bryan,* 76 W. Va. 481 (86 S. E. 8, L. R. A. 1915F, 1219), it was said:

"A receiver is the officer of the court that appoints him, and derives all his authority from its decrees and orders, and is accountable to. it alone for the faithful administration of his office.    Immediately upon his appointment and qualification he is vested with the right to the possession and management of the assets to be administered.    This is especially so in the case of an insolvent corporation.    The property of which a receiver has charge is *in custodia legis.*    His appointment and qualification is a sequestration of the property by the court, for the purpose of administering it for the best interests and protection of the rights of all persons interested in the estate.    His possession is the court possession, and he is subject only to its orders."

The holdings are in consonance with a long line of cases, among them see *Wiswall* v. *Sampson,* 14 How. (U. S.) 52; *Taylor* v. *Carryl,* 20 How. (U. S.) 583; *Freeman* v. *Howe,* 24 How. (U. S.) 450; *Hawk* v. *Harris,* 112 Iowa, 543 (84 N. W. 664, 84 Am. St. Rep. 352) ; *State, ex rel. Titlow,* v. *City of Centralia,* 93 Wash. 401 (161 Pac. 74) ; *In re Antigo Screen Door Co.,* 123 Fed. 249; *Porter* v. *Kingman,* 126 Mass. 141; *Freydendall* v. *Baldwin,* 103 Ill. 325; *Gilmore* v. *Bidwell,* 191 Ill. App. 152; *Morgan's Louisiana, etc., Steamship Co.* v. *Railway,* 137 U. S. 171 (11 Sup. Ct. 61) ; *Byers* v. *McAuley,* 149 U. S. 608 (13 Sup. Ct. 906).

We have noted the fact that the rule is applicable to cases where the property was not in the hands of a receiver.    In *Byers* v. *McAuley, supra,* an administrator had been appointed by the State court.    The Federal district court had assumed jurisdiction over the administrator.    It was held by the Supreme Court of the United States (quoting from the syllabus) :

"An administrator appointed by a State court is an officer of that court; his possession of the decedent's property is the possession of that court; and as such

it can not be disturbed by process issued out of a Federal court."

In *Hawk* v. *Harris, supra,* the property of a minor had been attached.   Afterwards a guardian was appointed for him by the probate court.   It was held that the property attached was in the hands of the court issuing the attachment and the appointment of a guardian by the probate court did not withdraw it to the probate court.   In *Freydendall* v. *Baldwin, supra,* the property was in the hands of the county court under an assignment for the benefit of creditors, and it was held that a creditor's bill in chancery was not maintainable.   In *Gilmore* v. *Bidwell, supra,* certificates of stock had been placed in the hands of the clerk by order of the court; it was held that they could not be reached by replevin from another court of concurrent jurisdiction.   Numerous Federal cases will also be found sustaining the rule where the question arose in conflict between Federal and State authorities and the processes issued by Federal and State courts.   We conclude the rule is applicable to the instant case, and that the property now in the hands of the trustee appointed by the Ionia court may only be disbursed by an order or decree of that court, and that it may not be paid out or disbursed by an order or decree of the Kent court.

We are, therefore, confronted with this situation: Plaintiff may not maintain an independent bill in the Kent circuit nor may he intervene under the statute in the Ionia proceedings to raise the question sought to be raised.   But somewhere in some court plaintiff is entitled to be heard and to have its rights adjudicated.   The court of appeals of Virginia, in *Spiller* v. *Wells,* 96 Va. 598 (32 S. E. 46, 70 Am. St. Rep. 878), said:

"Nothing can be more unseemly than a struggle for jurisdiction between courts; but a rule which rests for

its support upon considerations of convenience, however great, and of decency, order, and priority, however exacting, must yield to the higher principle which accords to every citizen the right to have a hearing before some court.     An essential condition, therefore, of the application of the rule insisted upon as to priority of jurisdiction, is that the first suit shall afford the plaintiff in the second an adequate and complete opportunity for the adjudication of his rights."

This was said, however, in considering the question of conflicting jurisdictions, but in *Brown* v. *Stuart*, 90 Kan. 302 (133 Pac. 725), that court went further and held that an action which did not disturb the immediate possession of another court was maintainable. We are persuaded, however, that an orderly method of procedure has been outlined by the Federal courts, which deal with a large number of receivership matters, which not only preserves the rule and at the same time furnishes a full and complete remedy to all parties, but which does not in any way interfere with a proper and due administration of justice. Frequently a receiver has among the assets turned over to him some property belonging to a stranger to the case; in such case a simple petition will present the matter to the court.     We have recognized the propriety of such proceedings.     Other matters may arise during the administration of a receivership or a trust estate which may properly be disposed of on petition. Such a proceeding, however, would be inappropriate for the determination of the question here involved. The Federal courts have recognized the propriety of filing an ancillary bill in the court having custody of the property, and this, we think, is an appropriate proceeding.     Speaking of it in a note (29 Ann. Cas. pp. 1032, 1033), the editorial writer says:

"By means of the dependent or ancillary suit, a new but subordinate litigation is begun; and, if the original suit has not already come to a hearing, the dependent suit may be conducted *pari passu* with it, or con-

solidated, or kept separate, as convenience, under the particular circumstances, may suggest. The adoption of ancillary proceedings, as a means of protecting the rights of a stranger to the original litigation, does not necessarily make such person an actual, party to the original proceedings. It merely begins a new litigation, so related to the first that the rights of the new plaintiff cannot be adversely affected by the adjudication finally reached in the original suit.  *   *   *

"As regards the pleading and practice in ancillary suits, it is to be observed that the mere fact that one suit is dependent on another does not in any respect dispense with the ordinary rules of pleading and practice as to the parties necessary and proper to such a cause of action, or as to the forms of pleading and procedure. Though the *res* acquired by the court under the original bill gives ancillary jurisdiction to entertain a dependent bill, the parties to the original bill are not thereby made parties to the dependent bill. Nor have the parties to the original bill any more right to intervene in the ancillary suit than if the court were exercising an independent jurisdiction. In other words, the relation between the two suits as principal and auxiliary is confined to the point of jurisdiction only. Having gotten jurisdiction in the dependent suit by reason of the possession of the *res* acquired in the principal suit, the court proceeds in the second suit without further regard to the original suit, or regarding it only as any other independent suit would be regarded."

In *Compton* v. *Jesup, supra,* it was said:

"Now, it frequently happens that under the process of the Federal courts, exercising the original and lawful jurisdiction conferred expressly by the Federal Constitution and statutes, possession is taken and control exercised over property in which persons not indispensable parties to the suit have an interest, by lien, mortgage, and in other ways. In such cases there often is no diversity of citizenship between such persons and the plaintiff or defendant to the suit which would warrant the Federal court in hearing an independent suit between them. But it may be essential, to preserve intact their rights in the property, that such third persons should be permitted, at once, to have specific relief which can only be granted by a court

having possession and control of the property. And yet, in accordance· with the principle already stated, no court but the Federal court can exercise possession and control over the property in its custody. Of necessity, therefore, the Federal courts exercise an ancillary jurisdiction in such cases; and third persons are permitted to come into the Federal court, and set up their interest in the property, and secure the same full and adequate protection and relief to which they would be entitled in any court of competent jurisdiction, were the property not impounded in the Federal court."

Mr. Justice Nelson, speaking for the court in *Freeman* v. *Howe, supra,* said:

"The principle is, that a bill filed on the equity side of the court to restrain or regulate judgments or suits at law in the same court, and thereby prevent injustice, or an inequitable advantage under mesne or final process, is not an original suit, but ancillary and dependent, supplementary merely to the original suit, out of which it had arisen, and is maintained without reference to the citizenship or residence of the parties."

*Krippendorf* v. *Hyde,* 110 U. S. 276 (4 Sup. Ct. 27), is quite in point. An attachment was issued by the circuit court of the United States for the district of Indiana and levied upon property claimed to be owned by appellant; he gave bond for delivery of the goods which he was required to pay. He attempted to intervene in the case but under the Indiana practice applicable to the Federal court was unable to do so. As pointed out by the court, he could not bring replevin in the State court, because the property was in the custody of the Federal court. He, therefore, filed his bill in that court to have his rights determined and to restrain the marshal from disposing of the funds in his hands. The bill was dismissed in the circuit court. The Supreme Court of the United States, in reversing the case, considers the question at some length. After quoting the language of Mr. Justice Nelson, just quoted by us, it was said:

"It has been sometimes said that this statement was *obiter dictum,* and not to be treated as the law of the case; but it was, in point of fact, a substantial part of the argument in support of the judgment, and, on consideration, we feel bound to confirm it in substance as logically necessary to it.   For if we affirm, as that decision does, the exclusive right of the circuit court in such a case to maintain the custody of property seized and held under its process by its officers, and thus to take from owners wrongfully deprived of possession, the ordinary means of redress by suits for restitution in State courts, where any one may sue, without regard to citizenship, it is but common justice to furnish them with an equal and adequate remedy in the court itself which maintains control of the property; and, as this may not be done by original suits, on account of the nature of the jurisdiction as limited by differences of citizenship, it can only be accomplished by the exercise of the inherent and equitable powers of the court in auxiliary and dependent proceedings incidental to the cause in which the property is held, so as to give to the claimant, from whose possession it has been taken, the opportunity to assert and enforce his right.   And this jurisdiction is well defined by Mr. Justice Nelson, in the statement quoted, as arising out of the inherent power of every court of justice to control its own process so as to prevent and redress wrong."

Where the bill is in reality an ancillary bill, the court will not reverse because unable to give it a proper cognomen.   In *Morgan's Louisiana, etc., Steamship Co.* v. *Railway,* 137 U. S. 171, 201 (11 Sup. Ct. 61), it was said:

"And whether this bill be regarded as a pure cross-bill, as an original bill in the nature of a cross-bill, or as an original bill, there is no error calling for the disturbance of the decree because the court proceeded upon it in connection with the other pleadings.   The jurisdiction of the circuit court did not depend upon the citizenship of the parties, but on the subject-matter of the litigation.   The property was in the actual possession of that court, and this drew to it the right

to decide upon the conflicting claims to its ultimate possession and control."

It follows that the decree dismissing plaintiff's bill must be affirmed. This, of course, is without prejudice to the filing of an ancillary bill in the circuit court for the county of Ionia, in chancery. Defendants will have costs of this court.

SHARPE, C. J., and BIRD, FLANNIGAN, WIEST, CLARK, and McDONALD, JJ., concurred.

The late Justice SNOW took no part in this decision.