José María Franceschi et al., Petitioners, v. District Court of Ponce et al., Respondents.

No. 898. Argued May 6, 1933.—Decided November 7, 1933.

*Henry G. Molina* and *M. León Parra* for petitioners. *López de Tord & Zayas Pizarro* in their own behalf.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

On June 18, 1928, the testamentary executors of Francisco María Franceschi filed a motion in the District Court of Ponce for the appointment of judicial administrators of the estate of said Franceschi. In pursuance thereof the court appointed temporary judicial administrators and, on December 12, 1928, the motion for the appointment of judicial administrators having been granted, permanent judicial administrators were appointed.

It is alleged by the petitioners that the district court *motu proprio*, on May 17, 1928, directed the interested parties to show cause why the judicial administration should not be discontinued, and that at the hearing held on May 19 of the same year it was decided by the court that the partition of the estate should be proceeded with as soon as practicable and that the attorneys López de Tord and Zayas Pizarro as well as Attorney Parra Capó should present their bills to the heirs as soon as possible. On August 17, 1932, the petitioners filed a motion in the court below to put an end to

the judicial administration. That motion was heard on the 24th of the said month and on March 2, 1933, the District Court of Ponce dismissed it. The petitioners further allege that attorneys López de Tord and Zayas Pizarro are claiming, within the judicial administration proceedings, the sum of $125,000 as their fees for professional services, covering a period of four years and rendered not only within the said judicial administration but also in several suits, and that as a consequence of that claim the said attorneys have opposed the delivery to the petitioners of their hereditary estate consisting of property worth at present not less than $400,000.

The court in its order dismissing in all its particulars the motion of the heirs for a discontinuance of the judicial administration and delivery of the estate, states, among other things, as follows:

"Really, what the heirs seek in their motion is an order of the court for the discontinuance of the judicial administration and delivery of the estate to the heirs, that is, the issuance by the court of the final decree referred to in section 59 and execution thereof.

"But, for the court to be able to issue the final decree and to order the delivery of the estate to the heirs, it is necessary that the following requisites shall be complied with:

"1. That the judicial administrator shall have completed his liquidation of the estate (section 55 of the Special Legal Proceedings Act);

"2. That the judicial administrator shall have filed a final account (section 55 of the Sp. L. P. A.); and

"3. That the debts of the decedent and the expenses of the administration shall have been paid (section 59, *supra*).

"Until all the above requisites shall have been alleged and shown, the court can not sustain the motion of the heirs.

"The heirs have alleged and shown in their motion the following facts:

"That there are pending claims from Dr. Alejandro Montalvo for professional services (decedent's debts), and from attorneys López de Tord and Zayas Pizarro for legal services rendered to the

judicial administrators and trustees and to the heirs and petitioners (expenses of the administration).

"It has not been either alleged or shown that the judicial administrator has filed his final account."

The petitioners maintain that the lower court erred in holding that there existed a lien on the estate in favor of the attorneys. Opposing counsel, López de Tord and Zayas Pizarro, contend that by its decision the lower court acknowledged their lien on the hereditary estate. They further state that the judges of the District Court of Ponce have ruled that the said attorneys are entitled to retain all the documents and securities of the Franceschi estate. The ruling of the lower court on this motion did not have the scope thus attributed to it. It confines itself to consider as expenses of the administration the professional services rendered by the said attorneys.

Nor is there involved in the instant case a retaining lien, because the hereditary estate is not in the possession of the attorneys but under judicial control. Whatever the opinion that this court might finally adopt in regard to the retaining lien or the right known in American jurisprudence as charging lien, it is a fact that this question was not settled by the lower court in passing upon the motion for a judicial administration, and need not be passed upon if we reach the conclusion that attorney's fees constitute expenses of the administration. We do not want, however, to pass unnoticed what Judge Brannon says, speaking for the court, in the case of *Fowler* v. *Lewis Admr.*, 14 S.E. 447, 461, in regard to hereditary estates under judicial administration. The following is from the opinion of the court in the cited case:

"I cannot concur in establishing the doctrine that when a fund belongs to an estate, simply because it is in the hands and power of a court, it shall be made to pay the fees of all the attorneys—plaintiff's or defendant's—connected with the case. If a dead man's estate is before the court, shall attorneys who may have resisted some claims against the estate be allowed large fees as a

lien upon the assets? I know no law for it. Establish the practice, and the door is opened wide to the demand of exorbitant fees, to the ruin of estates,—taking from widows and children moneys which should sustain and comfort them. Some witnesses would rate the fee at high figures; others, less. The court allows heavy compensation. Rarely could an appellate court remedy it. If, simply because a fund is in court, such arbitrary allowances may be made in the case of a dead man's estate, why, in every case of enforcement of judgments or mortgage liens, may not a lien be declared in favor of attorneys defending against such liens? Has the practice ever prevailed in Virginia? I cannot concur in the introduction of the innovation by mere judicial action. The attorney is competent to take care of himself. If his compensation is not assured, he can decline to render service. If he renders it, let him make his contract and secure himself. If the law, as it is, be not sufficient, let the legislature make proper regulations, as in England and many of our states has been done. I certainly am disposed to be fairly liberal to my own profession, but not at the sacrifice of the interest of the many. I do not think that it would confer a benefit upon that honorable profession, comprising the brightest men and leaders in society, trusted by the public with their most vital, sacred, and important interests, private and public; but it would in the end bring the whole bar into disrepute and unpopularity, by the improper and cormorant use which would often be made of the rule by the least meritorious of its members. An abuse we know it has become where it prevails. The United States Supreme Court in *Trustees* v. *Greenough,* 105 U. S. 527, condemns the practice of allowing large fees out of trust funds, now prevalent, and Mr. Justice Miller, in the same case, dissented, and called it a "gross judicial abuse of the present day, namely, the absorption of a property or a fund which comes into the control of a court by making allowances for attorneys' fees and other expenses."

Counsel for the heirs contend that the lower court erred in deciding "that the claim for fees for professional services rendered to the heirs independently of the testamentary proceedings" was included in the expenses of the administration. The petitioners establish a distinction between professional services rendered to the administrator and those rendered to the heirs, and they maintain that the former may be charged against the expenses of the administration and

included in the claim of the administrator, whereas the fees for professional services to the heirs can not be fixed within the judicial administration proceedings or be a bar to the discontinuance of the said administration. There is no doubt that the district court has power to decree the fees to be paid to an attorney for services rendered to the administration. Under chapter VII of Title I of the Special Legal Proceedings Act, the expenses of repairs and cultivation, taxes, litigation and all other ordinary expenses of the administration are for the account thereof. Section 41 of the above act provides that for such disbursements as well as for expenses of litigation and all other ordinary expenses of the administration, the judge may order the administrator to retain a sum sufficient therefor, or, if the ordinary receipts are not sufficient to meet them, he may order the same to be drawn from the depository. Among the expenses of litigation which are expressly mentioned by the law as expenses of the administration we consider as being included the services of the attorney lawfully engaged by the judicial administrator. Section 53 of the said act authorizes the judge to allow an administrator or executor the necessary and proper expenses incurred in the administration, including cost of advertising and publishing notices required by law, maintenance and care of the property, legal counsel and traveling expenses. So, there is no doubt, in our opinion, that the court had power expressly conferred by law to make disbursements for professional services rendered by an attorney to the judicial administration.

In *Carpenter* v. *Hazel,* 194 S.W. 225, the Supreme Court of Arkansas held that:

"An amount paid to an attorney for conducting litigation for the benefit of an estate is a part of the expenses of administration, and payment of the amount is a distribution of a part of the assets of the estate. It is necessarily a part of the jurisdiction of the probate court, which is exclusive over that subject, and no other court can invade that jurisdiction."

In *Nichols* v. *Reyburn*, 55 Mo. A. 1, 4, the Court of Appeals of St. Louis and Kansas City expressed itself as follows:

"On principle the proper answer to the first question must depend upon the character of the contract which the attorney makes in these cases. The administrator is a mere agent for the estate. The general rule is that, where an agent contracts for a disclosed principal, and acts within the scope of his authority, the principal, and not the agent, is liable upon the contract. To this rule, however, there are many exceptions, one of which is recognized in *Hovey* v. *Pitcher*, 13 Mo. 192, namely, that where the credit is given to the agent, the agent may personally be sued. Section 92 of the Revised Statutes of 1889 makes it the duty of the administrator to defend all actions brought against him, the defense whereof is necessary in the course of administration. Section 122 provides that the court shall allow the administrator, in his settlements, reasonable charges for legal advice and services. It was decided as early as *Gamble* v. *Gibson*, 59 Mo. 585, that an executor could subject the state to a charge for necessary legal services rendered to the estate at his request by another. Such claims are expenses of administration, and, if reasonable, must be allowed by the court against the estate as disminishing the assets of the estate in the hands of its statutory trustee to that extent.

"Such being the law, we hold that an attorney in contracting for professional services with an administrator, *prima facie,* contracts on the credit of both the agent and principal. The agent becomes responsible to him to the extent of the contract which he makes, without regard as to whether it is reasonable or not, or for the benefit of the estate or not; the estate becomes responsible to him for his reasonable charges for services rendered, which are for its benefit."

The argument of the petitioners is that if we are to follow the American doctrine the estate is not directly responsible for the fees of the attorney for the administrator. The case from Missouri just cited by us lays down, in our opinion, the doctrine that we should follow in Puerto Rico. It is also our opinion that the claim for attorney's fees must necessarily be included in the accounts of the administrator.

In *U. S. Fidelity & Guaranty Co.* v. *People,* 98 Pac. 828, 833, the Supreme Court of Colorado in an elaborate opinion

upholds a doctrine which seems the most reasonable and fair on this very question. The following is from the opinion of the court delivered in that case:

"In deciding this branch of the case, we simply hold that under the Colorado statutes referred to, which still exist in substantially the same form, the estate is primarily liable for a reasonable expense lawfully incurred in the administration and settlement thereof and that the county court has jurisdiction to allow directly to the claimant his demand therefor and order the administrator to pay the same, observing, of course, the statutory classification and requirements in so doing. Our view is that in contracting for or incurring such expenses the administrator acts for the estate, that he acts in his official, and not in his private or individual, capacity; and this is true whether that official appeals to the court for its sanction before incurring the liability, or takes the hazard of its subsequent approval. We do not hold that such expenses may not be liquidated by allowance to the administrator. Where he actually advances the same, this course is necessary, and where the administrator and claimant, by contract or otherwise, agree as to the amount of the claim, and the latter is willing, there is no reason why it may not be included in the former's report and allowed to him. The practice of allowing claims for these expenses to the administrator is often convenient and desirable. It has been frequently followed in this state, and what we have said is not intended to discourage its continuance whenever adequate and practicable."

It should be made clear that in the above case it was specifically alleged that the attorney's fees could only be collected through the administrator, that it was a claim against the said administrator and not against the estate, and that the attorney must have applied to that official for the latter to secure the reimbursement of any fees paid to him.

It is the contention of the petitioners that fees for professional services rendered to the heirs constitute a lien against the said heirs and not on the estate and can not be claimed in summary proceedings on motion within the testamentary execution. It is our opinion that the expenses of the administration, among which are included attorney's fees, may be

summarily determined by means of a motion within the same administration proceedings. The Supreme Court of Appeals of West Virginia, in *Jacobs* v. *Jacobs,* 131 S.E. 455, holds that generally application to the court for allowances of counsel fees may be presented informally by petition or motion, as has been established by numerous decisions of that court.

As to the distinction which the petitioners seek to establish between services rendered to the heirs and those rendered to the administrator, we must state that in our opinion services rendered by counsel in suits brought by the heirs or the administrator against persons for the recovery of property or rights belonging to the estate are services rendered to the estate and to the judicial administration. We hold likewise in regard to services rendered for the defense of the hereditary estate.

The attorney for the petitioners contends that according to the doctrine laid down by this court in *Pérez* v. *Zeda,* 35 P.R.R. 303, in intestate succession the continuation in the administrator of the decedent's personality is limited to the period between the death and the declaration of heirship. Since actions must be brought in the name of the heirs, the petitioners contend that it is they and not the estate who are liable for professional services rendered by attorneys. We do not think this view is correct. Actions dealing with rights and property belonging to the estate should be considered as actions of the judicial administration. We do not think, either, that the distinction which is established between the powers of the judicial administrator and those of the heirs in regard to the representation of the estate should be carried too far. The opinion delivered by this court is no bar to an explanation and amplification of the legal aspect of this question, if it is borne in mind that section 51 of the Special Legal Proceedings Act is not identical with section 1008 of the Spanish Law of Civil Procedure, commented on by Man-

resa, which refers exclusively to intestate succession until a declaration of heirship is made by final judgment. This section does not apply to wills, since it is therein stated who are the heirs. Such restrictions are not contained in section 51 of our Special Legal Proceedings Act which is applicable to intestate successions. That section reads as follows:

"It shall be the duty of the administrators and while they are being appointed, of the executors, to represent the decedent in all legal proceedings begun by or against him before his death, and in those which may be instituted afterwards by or against the inherited estate. Actions or proceedings brought by or against the decedent shall be stayed by his death until the executor takes charge or an administrator is appointed; and the executor or administrator shall be substituted as a party in the action."

We have stated that the judicial administrator shall represent the decedent in all legal proceedings brought by or against the estate until a declaration of heirship is made in favor of the heirs who will thenceforth have the said representation, and we explained and amplified the scope of our decision, stating that the heirs do not acquire an exclusive representation and that the judicial administrator, by virtue of the exclusive representation conferred on him by law, and the heirs as parties really interested, must act jointly in all actions brought by or against the hereditary estate.

Whether among the services rendered by attorneys López de Tord and Zayas Pizarro there are any which do not correspond to the judicial administration is a question to be determined in the first instance by the lower court, where such actions or services as are considered foreign to the said administration must be specified.

The first ground relied on by the lower court for its refusal to terminate the judicial administration, is that no compliance has been had with the requirement that the judicial administrator shall have completed his liquidation of the estate in accordance with section 55 of the Special Legal

Proceedings Act. In its pertinent part said section reads as follows:

"Whenever the administrator or executor shall have completed his liquidation of the estate, or resigns, or is removed, or for any reason ceases to be such administrator or executor, he shall file with the court a final account sworn to by him and accompanied by proper receipts and vouchers, which shall likewise be open for inspection."

In our opinion, as soon as the legacies and recognized debts shall have been paid, or security shall have been furnished to recognized creditors who set up an opposition to the termination of the judicial administration, the heirs, in their capacity as owners of the hereditary estate, may secure, on motion, from the court an order directing the judicial administrator to file his final account. The court has discretion to act summarily and compel that official to proceed without delay to perform such duty.

There is no doubt that the legacies and the recognized debts have been paid. It is so admitted by the parties, save the claim of the attorneys that their professional services have not yet been paid for. It must also be so assumed by us, considering the fact that about June, 1928, the court decreed, on motion, the appointment of a commissioner in partition (*contador partidor*) to proceed to the partition of the estate. It must be assumed that the court appointed such commissioner, pursuant to section 67 of the Special Legal Proceedings Act, which provides that whenever any executor or administrator is in possession of all of the estate, and shall have paid or shall have in hand a sufficient amount for the payment of the debts and expenses of administration, he must apply to the district court for the appointment of a commissioner in partition to make the partition of the estate. If there is no problem pending regarding the legacies and the recognized debts, and the heirs do not want to proceed to the partition of the estate, what remains, then to be done? In our judgment the filing of the final account by the administrator, which should not be a bar to the delivery of the estate

to the heirs, since the court can take steps to accelerate the proceedings and make provision for the payment of the said expenses, among which, according to us, must be included the attorney's fees. Section 71 of the Special Legal Proceedings Act provides, among other things, that where the heirs, being all of legal age, shall have informed the court that they are agreed as to the partition of the hereditary estate, they shall immediately be placed in possession of the hereditary estate by the executor or administrator having possession of the estate. That is what should be done when the heirs are agreed in respect to the partition of the estate, and that is what should also be done where there is no disagreement amongst them and they want to get the undivided possession of the hereditary estate without immediately proceeding to the partition, since under such circumstances the court can not refuse the delivery of the estate to its rightful owners.

Section 59 of the Special Legal Proceedings Act cited by the lower court in support of its findings prescribes that the final decree shall provide for the distribution of any surplus remaining after the payment of the debts of the decedent and of the expenses of the administration. In our opinion, it is evident that the law refers to recognized debts and not to every claim that might be established against the common fund. Otherwise any claim, judicial or extrajudicial, however whimsical, would be sufficient to hinder indefinitely the completion of the judicial administration. Such can not be the purpose of the law. According to section 23 of the Special Legal Proceedings Act, unsecured creditors with written title having a claim against the decedent are entitled to apply for a judicial administration of the property of said decedent. Applying the same principle, it seems logical that creditors who are not entitled to apply for a judicial administration should not have the right either to hinder its completion.

Subdivision 3 of section 973 of the Spanish Law of Civil Procedure provides that intestate proceedings may be instituted at the instance of creditors who present written and conclusive evidence of their claim, and who are not secured by mortgage or other guaranty. Commenting on the above section the text writer Manresa (Comm. Span. Law Civ. Proc., 3d ed., vol.4, p. 303) says:

"In order that the latter may be considered as entitled to institute intestate proceedings the following requisites must concur, according to subdivision 3 of section 973, to wit: 1, the presentation of a written title fully justifying their credit; and 2, that their credit is not secured by mortgage or other guaranty. The right of creditors has preference over that of the heirs in regard to the hereditary estate, and by reason of their interest in the preservation of the estate it is fair to allow them in the intestate succession the same rights as are granted to the presumptive heirs, whether the institution of the intestate proceedings be either by operation of law or on motion of a party, for the same reasons as hereinbefore stated. But the law does not confer such right on all creditors, but only on such as meet the above requirements, because it would not be fair to allow a stranger, under the pretense of being a creditor, and without justification, to interfere with the intestate proceedings, disturbing the peace of families and bringing about expenses and vexations to the prejudice of the lawful heirs.

"As to the first requirement, notice must be taken of the fact that the law requires a *written* title *fully* justifying their credits. There is no doubt that final judgments, agreements come to in conciliation proceedings and all instruments which, under section 1429, import an execution, meet the above requirement. Any promissory note or other private instrument is also a *written* title; but as it is worthless for *fully* justifying a credit unless it has been judicially acknowledged and such acknowledgment can not be made by the debtor by reason of his demise, such creditor can not be admitted as a legitimate party to the intestate proceedings, even though he may offer to verify the debt, because, under section 974, such verification must be made in conformity with section 973 which requires the presentation of a written title fully justifying the credit. (See judgment of the Supreme Court of April 20, 1891.)"

Section 1035 of our Civil Code (1930 ed.), similar to section 1082 of the Spanish Civil Code, provides that creditors, recognized as such, may oppose the division of the inheritance until they are paid or the amount of their credits is secured. Construing this section in harmony with the provision that only unsecured creditors with written title may apply for the judicial administration, it may well be concluded that the only persons entitled to oppose said administration are such recognized creditors until they are paid or the amount of their credits is secured. Commenting on section 1082 of the Spanish Civil Code, Scaevola (Comm. Span. Civ. Code, vol. 18, p. 477) expresses himself thus:

''Therefore, according to said section recognized creditors entitled to oppose the partition in case of failure to comply with the last condition prescribed by section 1082 are those whose credits are evidenced; by a public deed, provided that it is a first copy, or if it is a second copy, that it has been executed pursuant to a judicial order and after summons has been served on the person who might be prejudiced thereby or his predecessor in interest (in our case, even on the decedent's heirs); by a private instrument, provided that it has been recognized, under oath given before a judge with jurisdiction to approve the execution thereof, by the predecessor in interest or his successors; by confession made before a competent judge; by bills of exchange, and without the necessity of judicial recognition in respect to the acceptor who has not alleged falsity of its acceptance, at the time the bill was protested for nonpayment; by any securities payable to bearer or to a designated person, lawfully issued, which represent matured obligations, and the due coupons thereof, attached to said securities, provided that said coupons correspond to the securities and the latter, in every case, to the stub books and lastly by original policies of contracts executed with the intervention of brokers and subscribed by the contracting parties and by the same broker who intervened in the contract, provided they are verified, by virtue of a judicial writ and with notice to the other party, with their registry and the latter complies with the legal requisites.

''By analogy to what is determined by the judgment of December 2, 1885, according to which testamentary proceedings can not be instituted by creditors whose claim is conditional and

can not, therefore, be enforced, such creditors are not entitled either to avail themselves of the remedy provided by section 1082, because in both cases the same reasoning applies and must, therefore, lead to an identical legal conclusion.''

The lower court mentions in its decision two claims against the hereditary estate, one from Dr. Montalvo and another from attorneys López de Tord and Zayas Pizarro. As to the former, it does not appear that the same is included among the recognized obligations or that any opposition has been established to the completion of the judicial administration. As regards the latter, we have already held that professional services rendered to the administration constitute expenses thereof.

In the present case, where the legacies and the recognized obligations have been paid, the heirs, who are protected by their ownership of the hereditary estate, are entitled to the possession and enjoyment thereof and it is incumbent on the court to grant them that right. The real parties in interest are agreed in putting an end to this prolonged judicial administration. The only opposition thereto is from attorneys López de Tord and Zayas Pizarro, who contend that their fees should be paid prior to the transfer of the estate to its lawful owners. Up to the present time, the sum of $28,000 has been paid to the said attorneys for professional services besides $10,000 approximately disbursed by the heirs and which they consider as attorney's fees but which is excluded by the attorneys when valuing their services because, as claimed by them, it was given, by agreement with the said heirs, for the payment of stenographic work on all documents which required to be prepared in their offices at the rate of 20 cents for each original folio, and for stamps, travels and other expenses of administration. In view of the sum disbursed, it can not be ascertained whether or not there is a credit in favor of the attorneys, until the value of the professional services has been assessed by the court.

If in order to reach a final conclusion time is required by the court, then the court, in the exercise of its discretionary power, may adopt measures to secure the payment of the said professional services. In the motion filed by the heirs in the lower court on August 17, 1932, they applied for the possession of the hereditary estate "and undertook to satisfy any sums that they might be adjudged by the court to pay for professional services to attorneys López de Tord and Zayas Pizarro." The said heirs assert that they stated in open court that if the court was of the opinion that the motion could only be granted upon the furnishing of bond, the petitioners were willing to file a good and sufficient bond for any sum deemed necessary by the court to secure the payment of all outstanding obligations against the hereditary estate, against the judicial administrator or against the petitioners or either of them.

It is clearly seen that the heirs offered the court any security that it might require. In our opinion, the court has discretion to adopt any equitable and fair decision in order to secure and protect the rights of the parties. The hereditary estate is under its control and it is the duty of the administrator, who is an officer of the court, to obey its orders and decrees.

In *Bosworth* v. *Terminal R'D Ass'n,* 174 U. S. 189, the Supreme Court of the United States, expressed itself as follows:

"It is a common practice in courts of equity, anxious as they are to be relieved of the care of property, to turn it over to the parties held entitled thereto, even the final settlement of all claims against it, and at the same time to leave to the receiver the further defense of such claim, the party receiving the property giving security to abide by any decrees which may finally be entered against the estate."

Section 59 of the Special Legal Proceedings Act provides that the final decree on any accounting shall contain the provisions that law and justice require for the distribution of

the surplus, in money or property, remaining after paying (*satisfacer*) the debts of the decedent and defraying (*cubrir*) the expenses of the administration among those entitled thereto by law. "*Satisfacer*," according to the Dictionary of the Spanish Academy, means "to fully pay what one owes." "*Cubrir*," means "to pay or discharge a debt or balance, expenses, etc.—To provide against any liability, risk or injury." We are of the opinion that the purpose of the law is attained if the court, should it require time to fix the amount of the attorney's fees, demands, pending a decision as to whether or not any additional sum should be paid, any bond that it may deem sufficient and reasonable upon the condition that the heirs will acquiesce in and comply with the final judgment, and will immediately effect the payment of any sum which they might be adjudged to pay. Once the proper bonds are furnished, the court must peremptorily request the judicial administrator to file his final account and issue the proper writ.

For the foregoing reasons the order made by the District Court of Ponce on March 2, 1933, must be vacated and the case remanded to the said court for further proceedings consistent with the terms of this opinion.